# 𝕷𝖆𝖜 𝖆𝖓𝖉 𝕰𝖖𝖚𝖎𝖙𝖞

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

—————•-◦-•—————

## WESTFALL *vs.* JONES and others.

23b    9
24ap586
23b    9
30ap 21
30ap185

The law will never lend its aid to either of the parties to a fraud, to enforce an executory contract, nor to rescind or disturb one which has been executed, if founded in immorality or upon transactions forbidden by law.

The maxim in such cases is, *in pari delicto potior est conditio defendantis.*

Accordingly, where a suit was pending against J. and others, and J , with the view and for the purpose of creating a lien upon his real estate, prior to any which should be created thereon by virtue of the judgment to be recovered against him in that action, if any, executed a mortgage upon his land to P., with the understanding that the same should be under the control of J., to be assigned and foreclosed if he should so direct, or to be delivered up and canceled if J. should succeed in his defense to the suit; and there was no other inducement or consideration for giving such mortgage; *it was held* that the mortgage was absolutely void, whether in the hands of the mortgagee, or of an assignee deriving title through him.

*Held, also,* that the assignee of such mortgage, although he took the assignment thereof in good faith, and without notice or knowledge of the facts, had no other or greater rights in respect to the mortgage, and stood in no better condition to enforce it, than the mortgagee.

VOL. XXIII.                    2

Persons purchasing mortgages can always protect themselves by inquiring of the mortgagors whether the securities are valid; and if they purchase upon the faith of the mortgagors' representations that the same are valid, the mortgagors will be estopped from setting up the contrary.

Where a purchaser neglects this precaution, he will be considered as taking the securities upon the credit of the assignor, as to their legal validity.

THIS action was brought to foreclose a mortgage, and was heard upon pleadings and proofs.

*A. Worden,* for the plaintiff.

*S. V. R. Mallory,* for the defendant Jones.

WELLES, J.   This action was commenced to foreclose a mortgage given by the defendant Jones to Jabez Parsons, dated July 1, 1846, to secure the payment, to said Parsons, of the sum of $1078.81, with interest thereon, on the first day of January next after the date thereof, according to the condition of a bond of the defendant to said Parsons, of the same date. The bond and mortgage were assigned by Parsons to Joel Westfall, on the 6th day of March, 1848, and subsequently by Joel Westfall to the plaintiff.  The only defendant who appeared was Jones ; the other defendants being made parties as junior incumbrancers.  The defense set up by the defendant Jones is, that at the time of the execution of the bond and mortgage in question, a suit was pending against him, together with Spencer Hildreth and William Hildreth, who were then insolvent, in favor of George La Fever, upon a note executed by the Hildreths to La Fever, and which Jones had signed as their surety, for about $2000.  That Jones was not indebted to Parsons in any amount whatever, at the time the bond and mortgage were executed, and that the same were made and delivered to Parsons with the view and express understanding to create a lien upon the mortgaged premises, prior to that which should be created by any judgment which might be recovered in the action then pending in favor of La Fever against the Hildreths and Jones.  That the bond and mortgage

were to be under the control of Jones, to be assigned and foreclosed if he should so direct, or to be delivered up and canceled if Jones should succeed in his defense to the suit brought by La Fever, on the note; and that there was no other inducement or consideration whatever, for giving the bond and mortgage. These facts are, in my judgment, fully established by the evidence. It is also fully proved that the assignments by Parsons to Joel Westfall, and by the latter to the plaintiff, were for a full consideration paid at the times of such assignments, and that the Westfalls received the said assignments in good faith, without notice or knowledge of the facts above stated, connected with the execution of the bond and mortgage, and believing them to be good and valid securities, and given by the defendant to secure a *bona fide* indebtedness, according to their apparent tenor and effect. It does not appear that the defendant ever consented to either of the assignments, or that he knew of them until after they were made; or that he has ever done any act, except giving the bond and mortgage, by which such consent or knowledge can be intended or inferred. It is also shown that the suit in favor of La Fever against the Hildreths and Jones was tried at the Ontario circuit in May, 1847, and a verdict and judgment rendered in favor of Jones.

Upon the foregoing facts the question arises, whether the plaintiff in this action is entitled to any relief; in other words, whether he should have judgment of foreclosure in the action, according to the prayer of his complaint.

If the bond and mortgage had not been assigned by Parsons, and this action had been brought by him, no doubt could be entertained. The transaction between him and the defendant Jones is steeped in immorality and fraud, on both sides, without one single redeeming consideration; and the law will never lend its aid to either of the parties to the fraud, to enforce an executory contract, nor to rescind or disturb one which has been executed, founded in immorality, or upon transactions forbidden by law. (*Nellis* v. *Clark*, 20 *Wend.* 24. *S. C.* 4 *Hill*, 424. *Holman* v. *Johnson*, *Doug*. 341–3.) Indeed the books

are full, to the same effect. The maxim in such cases is, *in pari delicto potior est conditio defendentis.*

Does the plaintiff, being a *bona fide* purchaser, and assignee of the bond and mortgage, stand in any better condition than the person from whom he derived his title? It is a well settled principle, that the assignee of a chose in action takes it subject to all equities which existed against it in the hands of the assignor. It is contended, however, on the part of the plaintiff, that here are no equities between the original parties; and that the principle just stated does not contemplate a case of this description, but applies only to cases of legal transactions, where one of the parties is under some obligation to pay or perform, but which is connected with some condition, which may defeat or modify the obligation, or where something has been done or has happened subsequently, and before the assignment, which would have the same effect. It is also argued, that the defendant having made and delivered to Parsons these fraudulent securities, and thus placed it in the power of the latter to put them in circulation, and impose upon innocent persons, is estopped from setting up this defense, as against the plaintiff.

But I am prepared to hold that the plaintiff has no other or greater rights in relation to this bond and mortgage, and stands in no better condition, than Parsons, the mortgagee. Clearly, the latter could assign to the former no other rights than he possessed himself. He had no right of action upon the securities, and could, of course, transfer none. The plaintiff has no rights except as derived from Parsons, through the assignment. It is immaterial on what ground the law would refuse its aid to Parsons. If he had no right to recover before the assignment, it seems perfectly clear to me he could confer none upon another. Persons purchasing this class of securities can always protect themselves by inquiring of the obligors whether they are valid; and if they purchase upon the faith of the obligors' representations, that the securities are valid, the latter would clearly be estopped from setting up the contrary. In *Murray* v. *Lylburn,* (2 *John. Ch. R.* 441,) Chan-

cellor Kent says, on page 443, "The assignee can always go to the debtor and ascertain what claims he may have against the bond or other *chose in action* which he is about purchasing from the obligee." Where the purchaser neglects this precaution, he must be deemed as taking the securities upon the credit of the assignor as to their legal validity. ( *Willis* v. *Twambly*, 15 *Mass. R.* 204.) In this case the plaintiff comes into court and asks for the enforcement of a contract conceived and executed in iniquity by both the parties to it. True, *he* was not a party to the fraud, but he must necessarily subrogate himself to the place of one of the guilty parties, and standing in the place of the latter, ask the court to lend him assistance to obtain what they would refuse to the party with whom he stands in immediate privity. This, I think, he has no right to do.

There must be judgment for the defendant, with costs.

[YATES SPECIAL TERM, November 28, 1853. *Welles*, Justice.]