WILLIAM VON SACHS, Assignee, etc., Appellant, *v.* GEORGE
C. KRETZ et al., Respondents.

It is not error for a referee to refuse to allow a witness to show the results
derived from his examination of books of account, where it does not
appear that it requires expert testimony to ascertain the facts offered to
be shown by the witness; while he may allow a witness with the books
before him to give a summary of their contents, this is discretionary
with him.

The declarations of a bankrupt, made before the bankruptcy, are admissible as evidence against his assignee in bankruptcy to establish or
support a claim against the estate of the bankrupt.

A vendee of chattels or an assignee of a chose in action must be a purchaser for value in order to exclude the declarations of a prior party in
interest from whom he derived title, made before such party parted with
his interest.

The statute of limitations does not run after an adjudication in bankruptcy against the claim of a creditor of the bankrupt, which was not
barred by the statute at that time.

(Argued February 8, 1878; decided February 19, 1878.)

APPEAL from judgment of the General Term of the
Supreme Court, in the second judicial department, affirming
a judgment in favor of defendants entered upon the report
of a referee. (Reported below, 10 Hun, 95.)

This action was brought by plaintiff as assignee in bankruptcy of John F. Schepeler, of the firm of Schepeler & Co.,
to foreclose a mortgage executed by defendants to secure a
bond of defendant, George C. Kretz.

Defendants set up in their answer that the bond and mortgage were executed to said Schepeler in trust for his firm,
and that said firm was indebted to said George C. Kretz in
the sum of $4,000, a balance due and unpaid under a contract for the services of said Kretz as clerk for the year
1863, which contract was in substance that Kretz was to
receive for his services four per cent of the net profits of
the firm.

The further facts appear sufficiently in the opinion.

*Samuel Hand,* for appellant. An account stated will not be opened except for fraud or mistake. (*Lockwood* v. *Thorne,* 1 Kern., 170.) The entries in the books of account showing that the credits to Kretz relied upon by defendants had been counter-balanced by counter-charges against him, "about the same time or afterwards," were evidence against him. (*Pendleton* v. *Weed,* 17 N. Y., 72; *Dewey* v. *Hotchkiss,* 30 id., 497; *Low* v. *Payne,* 4 id., 247.) The order in bankruptcy did not suspend the statute against Kretz, who could either sue by leave of the bankrupt court or prove his debt in bankruptcy. (*Collister* v. *Holley,* 6 Gray, 517.) Explanations of the books of double-entry by an expert were clearly admissible and necessary. (*Harrison* v. *Kirke,* 38 Sup. Ct. R., 396; *Colwell* v. *Lawrence,* 38 N. Y., 71.) The referee erred in admitting evidence of what the assignor said in 1868. (*Bullis* v. *Montgomery.*)

*John H. Bergen,* for respondents. The assignee took the bond and mortgage subject to all equities existing at the time of the assignment. (Burr. on Assignments [2d ed.], 483; *Smith* v. *Felton,* 43 N. Y., 419.) The statute of limitations did not run against the claim of Kretz set up in the second defense. (Aug. on Lim. [3d ed.], 190, § 167; *Ex parte Ross,* 2 G. & J., 330; *Parker* v. *Sanborn,* 7 Gray, 191; *Minot* v. *Thacher,* 7 Met., 348; *Willard* v. *Clarke,* id., 435; Robson on Bankruptcy, 166.) The answer set up a counterclaim. (*Isham* v. *Davidson,* 52 N. Y., 237; *Lawrence* v. *Bk. of Republic,* 3 Robt., 142; Wait's Code, 268, note *k*; New Code, § 502.)

Andrews, J. The defendant George C. Kretz, under his agreement with Schepeler & Co., was entitled to four per cent of the net profits of the business of the firm for the year 1863, as a compensation for his services in that year, and the referee found that the net profits of the business in 1863 were between $256,000 and $257,000, of which $100,000 were not distributed, and that $4,000, with interest

from January 1, 1864, was due to Kretz from Schepeler & Co., on account of his share in the undistributed profits.

We are concluded by the finding of the referee upon this question, if there was any evidence tending to sustain it. The testimony of Kretz was taken upon commission. He testified that the net profits of Schepeler & Co. in 1863 were about $257,000, and exceeded $256,000, and that $100,000 of this amount was not divided, but was passed to a separate account called "reserved capital account," for future distribution among the parties interested. In answer to a cross-interrogatory as to how he arrived at the net profits, he stated that at the end of 1863 the books were carefully balanced by himself, assisted by one of the firm, and under his direction, and that the amount of the net profits, as stated by him, appeared from the balance then struck, and that in making it all the losses during the year were taken into account. The books of Schepeler & Co. were introduced by the defendant. On one page of the journal were entries crediting to the several members of the firm and to Kretz sums amounting in the aggregate to $156,615.71, of which sum $6,264.63 was credited to Kretz as follows: "George Kretz, capital account four per cent on $156,615.71, for 1863, $6,264.63." Below these entries was an entry as follows: "Sundries to balance account reserved account fund, 1863, $100,000." The plaintiffs at a subsequent stage of the trial read from the private journal, from what appeared to be a profit and loss account, this entry: "To reserved funds of 1863. Write off for depreciation of currency, $100,000." It does not appear when this entry was made; but, from its connection with other entries, it is probable that it was made after October, 1864, at which time Kretz left the employment of Schepeler & Co., and there is no explanation of the meaning of the entry or when the depreciation occurred to which it refers. If this sum represented losses occurring after January 1, 1864, not connected with the business of 1863, the case discloses no reason for charging any portion of the loss against Kretz's share of

the undistributed profits of 1863. It was, upon the whole evidence a question of fact whether Schepeler & Co. were indebted to Kretz in the sum of $4,000 on account of the profits of 1863, and the finding of the referee upon the subject is conclusive.

. The referee against the objection of Kretz, and on the ground that he, by introducing the books, made them evidence generally as to his account, permitted the plaintiff to show entries appearing therein of charges against Kretz between January 1, 1864, and January 1, 1865, two of them of a date subsequent to October, 1864. It is claimed by the plaintiff, and this claim appears to be well-founded, that the account of 1864, appearing upon the books, shows a balance against Kretz, in favor of Schepeler & Co., of $1,767.91, and this sum, the plaintiff insists, should have been allowed in reduction of the claim for the undistributed profits. The referee expressly found that the plaintiff was not entitled to have this apparent indebtedness of Kretz applied on the $4,000, and also that the whole sum of $4,000 was due and unpaid. The point here is, was it an error in law for the referee to disallow the balance of $1,767.91? He admitted the whole account to be shown, and it must be assumed that he considered the claim of the plaintiff to be allowed this credit and rejected it. The entries in the account of 1864 were not in the handwriting of Kretz, and although up to the time he left the employment of Schepeler & Co. he had access to the books, it does not appear that the entries were seen by him. There is no proof aside from the entries themselves when they were made; they were entries in the interest of Schepeler & Co. The referee had the books before him. The appearance of the entries may have indicated that they were made at one time, and after the transactions to which they relate. There is no affirmative evidence in the case that they were not made in the usual course of business, but every intendment is in support of the judgment, and there is no finding inconsistent with the fact that the referee may have been satisfied, from inspection of the books, that the account was

not entitled to credit. Sitting in review of the case, without the books before us, we cannot say that the account of 1864 was not subject to criticism and suspicion, and for that reason properly rejected.

The offer to show, by the witness Moyer, the results derived from his examination of the books of Schepeler & Co. was rejected by the referee, on the ground that the books were in evidence and "spoke for themselves." This was not error. It does not appear that the referee could not, without the aid of expert testimony, ascertain from the books all the facts offered to be shown by the witness. It would not have been error for the referee to have allowed a witness, with the books before him, to give a summary of their contents; but this was a question of convenience simply, and a matter within his discretion.

The defendant Kretz was asked whether, in 1868, he had a conversation with John F. Schepeler, one of the firm of Schepeler & Co., in respect to the balance due to him from the firm, on account of his percentage or share of the net profits of the business of 1863, and the question was objected to on the ground that the declarations of Schepeler & Co. were not admissible against the plaintiff, and more generally that the declarations of a former owner or assignor were not admissible against his assignee. The referee overruled the objection, and the witness testified that in October, 1868, he had a conversation with John F. Schepeler in regard to such balance, and the witness proceeded: "He (Schepeler) spoke about several business matters; and I asked him to settle this claim; and he promised that he would attend to it; but he never did so."

In considering the correctness of the ruling of the referee admitting this evidence it is important to bear in mind the position of the plaintiff, and the nature of the action. The firm of Schepeler & Co. became bankrupts in 1869, and the plaintiff was appointed their assignee in bankruptcy in June of that year. The mortgage, which this suit is brought to foreclose, was executed in March, 1869, to·

secure a loan made at or about its date from Schepeler &
Co. to Kretz, and Kretz claimed in his answer to set-off the
$4,000, and interest alleged to be due him from Schepeler &
Co. The plaintiff sues as assignee in bankruptcy, and has and
claims no title to the mortgage in any other character. The
conversation with John F. Schepeler in 1868, allowed to be
proven if admissible, was clearly relevant and material. It
was a recognition by Schepeler & Co. of the existence and
validity of the claim made by Kretz, and tended to rebut
any unfavorable inference which might be drawn from the
delay on his part in presenting it. In an action by
Schepeler & Co. to foreclose the mortgage, no objection
could have been made to the proof of the conversation
in question. It would, as stated, have tended to establish
the claim asserted by Kretz, and the point here is, whether
it was admissible to establish or support a claim in his
favor against the estate of the bankrupts. That the declara-
tions of a bankrupt, made before the bankruptcy, are
admissible for this purpose against his assignee in bankruptcy
has been frequently decided in the English courts. (*Small-
combe* v. *Bruges*, 13 Price, 136; *Watts* v. *Thorpe*, 1 Camp.,
376; *Butt* v. *Leavitt*, 13 East, 213; *Bateman* v. *Howard*,
5 Term, 513; *Dowton* v. *Sheriff*, etc., 1 Esp., 168.) In
*Smallcombe* v. *Bruges* the question was whether the declara-
tions of the bankrupt, made intermediate the act of bank-
ruptcy and the issuing of the commission, could be shown,
and it was held that as the bankrupt could not affect
his estate by his acts after the act of bankruptcy, he could
not do so by his declarations; but the court affirmed the
doctrine of previous cases that the declarations of a bank-
rupt made before the act of bankruptcy were admissible to
charge his estate.

The case of *Paige* v. *Cagwin* (7 Hill, 361) is a leading
case in this State on the subject of the admissibility of decla-
rations made by the former owner of personal property, while
he was the party in interest, against one deriving title from
him. That was a suit by an indorsee against one of the

makers of a joint and several promissory note, transferred for value after maturity to the plaintiff. On the trial the defendant offered to prove the declarations of the payee of the note, made while he was the holder, to establish that the defendant executed the note as a mere surety for one of his co-makers, and an agreement between the payee and the principal debtor after the note was made, extending the time of payment. The evidence was rejected and the ruling was approved by the Supreme Court, and the judgment of that court was affirmed by the court of errors. The opinion of Senator Lott in the court of errors contains an elaborate review of the authorities bearing upon the question. The learned reporter in the syllabus of the case states as the proposition decided, that declarations made by the payee of a negotiable promissory note, while he owns and holds it, are not admissible against one to whom it is subsequently transferred *for value*, though the transfer is after maturity. This case has been frequently followed in our courts, and is regarded as establishing the general rule that the declaration of a vendor of chattels or the assignor of a chose in action, made before he parted with his interest therein, are inadmissible against his vendee or assignee. (*Jermain* v. *Denniston*, 6 N. Y., 276; *Booth* v. *Swezey*, 8 id., 276; *Tousley* v. *Barry*, 16 id., 497.)

But the qualification found in *Paige* v. *Cagwin*, that the vendee or assignee must be a purchaser for value in order to make the declaration inadmissible, is an essential part of the rule. In *Brisbane* v. *Pratt* (4 Den., 63), this point was directly adjudicated, and it was there held that the declarations of a prior holder of a promissory note transferred after maturity are admissible against his indorsee, where the latter is not a holder for value. In *James* v. *Chalmers* (6 N. Y., 209), this case was questioned upon another point decided, viz., that the presumption that an indorsee of a note is a holder for value does not exist, when it is shown that he took it after maturity, but the decision on the other point was not questioned ; and, in *Green* v. *Given* (33 N. Y., 369),

the case of *Brisbane* v. *Pratt* was cited with approval upon
the point that the plaintiff must be a holder for value in
order to exclude the declarations of a prior party in interest,
from whom he derived his title. Where a party against
whom the declarations are offered claims as a privy by repre-
sentation through the person making them, or is identified
in interest with him, they are clearly admissible. The
declarations of an intestate, or of a testator, touching the
title to personal property, or establishing a defense to a claim
asserted by the executor or administrator, or a demand
against the estate he represents, are constantly received upon
this ground. (*Brown* v. *Mailler*, 12 N. Y., 118; *Smith* v.
*Smith*, 7 C. & P., 401.) The position of an assignee in
bankruptcy, in respect to the estate of the bankrupt, is, in
many respects, analagous to that of executor or administrator
in respect to the estate of the decedent. He holds the
assigned estate in trust for the bankrupt and his creditors.
He is not a purchaser for value, and in asserting a claim
held by the bankrupt, he stands upon his right and title,
and not upon any new and independent right or equity.
Whatever he recovers is for the benefit of the bankrupt,
and constitutes a fund for the payment of his debts, and
the bankrupt is entitled to any surplus remaining after they
are satisfied. That this relation between a bankrupt and
his assignee creates an identity of interest between them
which makes his declarations evidence against his assignee
is assumed in the opinion in *Paige* v. *Cagwin.* We are
of opinion, upon principle and authority, that the declarations
of Schepler & Co., received in this case, were properly
admitted. They were made before the bankruptcy and
against the interest of the person making them. The
assignee brought his action to enforce a demand in favor
of Schepler & Co., as to which Kretz had the right to
set-off any demand in his favor against the firm, which was
the subject of set-off. (*Bathgate* v. *Haskin*, 51 N. Y., 533;
*Hunt* v. *Chapman*, id., 555.) And the declarations of
Schepler & Co. were admissible to establish or support a

demand in his favor. In *Bullis* v. *Montgomery* (50 N. Y., 352), the declarations there offered were made before any right or interest in the property was acquired by the persons whose declarations were offered in evidence; and the court held that the declarations were inadmissible. That case is not in conflict with the views here expressed. See, also, *Bond* v. *Fitzpatrick* (4 Gray, 89).

The statute of limitations had not run against the demand in favor of Kretz, when Schepler & Co. were adjudicated bankrupts. The assignee of a bankrupt stands in a position of trustee for his creditors, and the statute did not run against their claims against the estate of the bankrupt, not barred at the time of the adjudication. (*Ex parte Ross*, 2 Glyn & Jameson, 330; *Parker* v. *Sanborn*, 7 Gray, 191; *Minot* v. *Thacher*, 7 Met., 348.)

There was, we think, no error committed on the trial, and the judgment should be affirmed.

All concur.

Judgment affirmed.