Follett, J.
Appeal from a judgment entered upon the decision of a special term, setting aside as fraudulent against creditors a- deed, mortgage and general assignment.
From January 1; 1863, to December 10, 1884, J. Forman and Alfred Wilkinson were partners, under the style of Wilkinson & Co., and engaged in the business of banking, at Syracuse, Ñ. Y., where they resided. For some years prior to May 5, 1884, said firm owned a valuable piece of real estate in said city known as the Globe Hotel, and each partner owned a valuable residence on James street, in said city. May 5, 1884, the hotel was subject to two mortgages given to the sisters of J. Forman and Alfred Wilkinson, upon which there was unpaid about $93,600. Said pieces *298 of real estate were, May 5, 1884, worth over and above said mortgages about $281,000. On the date last named, said Wilkinsons and their wives executed and acknowledged a deed purporting to convey said three pieces of real estate to John Wilkinson, their brother, residing at Chicago, 111. It is recited in the deed that it was executed “in consideration of the sum of $140,000 to them duly paid.” The deed was acknowledged before W. R. Chamberlin, a notary public, who was an attorney, who for many years had been the counsel of the grantors. Mr. Chamberlin retained the deed until December 9, 1884, when, at 5 o’clock in the afternoon, it was recorded. Prior to December 9, 1884, the existence of the deed was unknown, except to the parties thereto, the notary, and one Charles P. Crosby, an attorney in the city of New York. The grantors continued in possession of the premises until December 9, 1884, occupying their respective residences and collecting the rents and managing the hotel property as before the date of the deed. The property was assessed to and the insurance was continued in the names of the grantors, and new policies were issued to them between May 5, 1884, and December 9, 1884. No part of the consideration recited in the deed was paid at or about this date.
The defendants sought' to support this instrument upon the theory that it was given on account of an indebtness of the grantors to the grantees, evidenced by a bond dated November 1, 1873, to secure the payment of “the sum of $140,000, or all of the moneys, stocks and bonds of all description that they, the parties of the first part, may receive and hold, as executors or otherwise,, for and on account of the above named John Wilkinson and Dudley P. Wilkinson, also of Chicago, together with annual interest upon the aforesaid sum of $140,000, without fraud or delay, then the preceding obligation to be void, otherwise to remain in full force and virtue.”
John Wilkinson died September 19,1862, leaving a widow, Henrietta W., four sons, J. Forman, Alfred, John, and Dudley P., and two daughters, Maria H. and Theodosia. He left a will, dividing his estate, after the death of his widow, substantially, equally between his children. The widow, Henrietta W., J. Forman and Alfred were the executors under the wifi. The widow died in May, 1873. Between the dates of the death of the parents each of the children received portions of the estate, and January 14, 1874, a final accounting was had, wherein it was adjudicated that the whole estate had been distributed except $62,453.20. By this accounting, and a previous one of April 10, 1873, it appears that John and Dudley P. had each received his share of the estate except their interests *299 in the $62,453.20 undistributed. But J. Forman, Alfred and John testify that John and Dudley P. had not been paid, in fact, as adjudged by the surrogate, but that they acknowledged payment so as to enable the executors to obtain the decree, and that the bond of November 1, 1873, represented the amount due John and Dudley P. from the estate, and was taken in lieu of cash.
The four brothers have been active business men, engaged in large transactions, and accustomed to enter their affairs upon books. But there were no entries in the books of the estate, in the books of Wilkinson & Co., or in the books of John and Dudley P. at Chicago, showing how the consideration of this bond arose, nor are there any entries in books referring to the. existence of such a bond, or to payments made thereon.
The learned trial judge held, and we think correctly, that the obligors were not indebted to the obligees in the amount named in this bond, and that it was fraudulently devised, and antedated, for the purpose of raising an apparent consideration for the deed of May 5, 1884. The court found that this deed was without consideration, and that the grantors were insolvent at its date; which finding is abundantly supported by the evidence.
November 24, 1884, John Wilkinson executed under seal, and acknowledged at the city of New York, a mortgage to Charles P. Crosby on the premises described in the deed of May 5, 1884, to secure the payment of $125,000 one year from its date, with six per cent, interest, payable semiannually.
On the same day a written contract, under seal, was entered into between John Wilkinson and Crosby, by which Wilkinson agreed to have said mortgage executed by his wife and delivered to Crosby within fifteen days, who agreed to pay within sixty days thereafter $120,000 for said mortgage if it appeared, by a search to be furnished, that it was the first lien on said premises. On the same day Crosby executed under seal, and acknowledged, a satisfaction of said mortgage; and on the same day, he executed, under seal and acknowledged, an assignment of said mortgage to John Wilkinson, the mortgagee. The mortgage, satisfaction and assignment were acknowledged before William Tharp, a notary public, and clerk in Crosby’s office.
The usual clerk’s certificate, dated November 24, 1884, is attached to each acknowledgment, certifying to the official character and signature of the notary. John Wilkinson, Charles P. Crosby and W. E. Chamberlin were the participants in this transaction, which was initiated by a letter from J. Forman Wilkinson to Crosby, which fact is sug *300 gestive of an understanding between all the Wilkinsons as to what was to be done. This mortgage was recorded December 9, 1884, at five o’clock in the afternoon, on which day the assignment was executed. John Wilkinson, Charles P. Crosby and W. R. Chamberlin were examined as witnesses in this case. Each testified that this mortgage was without consideration. The mortgage, contract, assignment and satisfaction were delivered to Chamberlin, who retained them in his custody until December 9, 1884 (the date of the general assignment), when, at five P. M., he put the deed of May 5, 1884, and the mortgage on record. Neither of these witnesses gives a plausible excuse for the existence of these inconsistent papers.. That they were devised, and the mortgage placed on record by these persons for the purpose of deceiving and defrauding the creditors of the Wilkinsons is hardly denied by either of the three, and the purpose is so apparent that the counsel for the appellants'nave framed no excuse for the transaction, and, in effect, concede its fraudulent nature. The trial court well found that the mortgage, assignment thereof, satisfaction thereof and contract in relation thereto (all dated November 24, 1884), were fradulently designed by the parties participating in their preparation.
December 9, 1884, J. Forman Wilkinson and Alfred Wilkinson executed and acknowledged a general assignment, in form, for the benefit of their creditors, which was recorded at ten o’clock the next morning.
It is urged that, though the deed of May 5, 1884, is fraudulent, such fact does not affect the assignment, executed seven months afterwards, which prefers none but honest creditors, and directs the remainder of the estate to be distributed pro rata among the unpreferred creditors. The custodian of the deed, who also aided in the,, preparation of the Crosby mortgage and accompanying papers and acted as their custodian, drafted this assignment, as he testified, without the aid of any other person. He also testified that the schedules following the assignment “ were prepared by the assignors under my direction in a measure.” In these schedules it is stated that Wilkinson & Co. are indebted to John Wilkinson for $9,710.37 for rent collected from the real estate between May 5 and December 9, 1884. If the deed was a fraud, this claim for rent was a fraud, and it is apparent that by the assignment and schedules, the assignors intended to protect the deed and also to divert this further sum from their creditors.
The deed, mortgage and accompanying papers were just as fraudulent on the 9th of December as they were at their respective dates. The vice and fraudulent intent does not reside in the instruments, but in the minds of the persons *301 who devised the fraud and sought to give it legal effect through the instruments. The acts of these persons do not justify the conclusion, as a matter of fact, that they had purged their minds of the fraudulent purpose entertained when they devised and executed the deed and mortgage, for if they had repented, and become possessed with the purpose of making an honest assignment of all of their property for the sole benefit of their real creditors, these conveyances would not have been recorded, but destroyed.
It is said that but few creditors are preferred by this assignment, that their claims are unquestioned, are of the nature of trusts, and that the remainder of the assigned estate is to be distributed pro rata among such creditors as may be able to establish their claims. It is also said that this assignee is authorized to maintain an action for the recovery of the estate affected by the previous fraudulent conveyances, and that he is now prosecuting such an action. If he is engaged, in good faith, in prosecuting such an action in the interest of the creditors, in the belief that the conveyances are fraudulent, it is difficult to see why he appears as an appellant in this court, seeking the reversal of that part of the judgment which accomplishes the very end which he desires.
In the assignee’s brief submitted on this appeal it is urged (second point), “that John Wilkinson, at the time of this assignment, had a claim for rents legally enforceable against the assignors.” This seems a strange position for an assignee to take, who, in good faith, is insisting by suit that the realty out of which the rents arose was fraudulently conveyed to John Wilkinson.
By an examination of the assignee’s requests to find facts it appears that he asked the trial court to find such facts as would establish the validity of the deed of May 5. When an appellate court is asked to review the facts, it may take into consideration all of the facts appearing in the record, and also the attitude of the parties upon the appeal
Under the evidence, we cannot doubt that these persons were engaged in a conspiracy to defraud the creditors of Wilkinson & Co., and that the bond, deed, mortgage and assignment were steps taken with such apparent intervals of time between them as was thought would not arouse suspicion, and that there was no delivery of the deed to John Wilkinson with intent to vest the title of the real estate in him until December 9, 1884.
The finding of the trial court that the assignment was fraudulent in fact must be sustained.
It is insisted by John Wilkinson, and also by this assignee, for the benefit of creditors, that John Wilkinson, as the owner of the fee of the real estate, is entitled to re *302 ceive the rents and profits between May 5, 1884, and December 9, 1884.
Several cases are cited, two recently decided by this court, holding that the innocent owner of the legal title, who has been in possession of the realty, managed it and enjoyed the profits, or received the rents, cannot be compelled to account to the creditors of the persons from whom the legal title was acquired. Such is not this case. John Wilkinson was not an innocent holder of the legal title, nor does, the evidence justify the belief that the deed was delivered prior to December 9. He never entered into possession under the deed, nor received the rents, issues and profits, nor has he incurred the expense or risk incident to the management of the property. Had he gone into immediate possession under his deed, managed the property, enjoyed the use or received the rents, a different question would be presented.
This court knows no rule of law or equity, whicn justifies it in requiring a trustee for the benefit of creditors to acccount for and pay over to a fraudulent grantee the rents, of property which the fraudulent grantor has been permitted to collect.
The plaintiffs were permitted to prove by persons having-deposited with Wilkinson & Co., that between May 5, 1884, and December 9, 1884, J. Forman Wilkinson said to them the firm owned the Globe Hotel property. These declarations were made while the relation of banker and customer existed between the Wilkinsons and the witness, for the evident purpose of allaying suspicions, or inspiring confidence in respect to the solvency of Wilkinson & Co. At the time these declarations were made Wilkinson & Co. were in possession of all of the real estate. The evidence tended to show that the Wilkinsons had not then conveyed the title to John Wilkinson, or if the deed had then been executed, it shows that J. Forman Wilkinson made false representations in respect to the then condition of the firm’s-property. It has been found, as a fact, that the three Wilkinsons were engaged in a conspiracy to defraud the creditors of Wilkinson &' Co., and the declarations of each of the co-conspirators in furtherance of their common purpose, are admissible against all. The evidence was clearly competent as against the three Wilkinsons. So far as the evidence tends simply to impeach the title of John Wilkinson, it is not against the interest of the assignee, but in his interest. The evidence being competent against the three Wilkinsons, it does not become incompetent as against the assignee, because it may be a link in a chain establishing a fraudulent purpose in the assignors in making their assignment. To say that the acts and declarations of the assign *303 ors previous to the assignment, done and made in respect bo the business, are inadmissible upon the question of the intent of the assignors, is equivalent to saying that an assignment cannot be set aside for the frauds of the assignors unless the assignee participates therein, or unless the assignment is void on its face. Such is not the rulo. Adams v Davidson, 10 N. Y., 309.
In Vidvard v. Powers (34 Hun, 221), the issue was not whether the assignment was void, but whether the assignor had purchased, previous to the assignment, goods with the preconceived design not to pay for them. The issues in the two cases are quite different.
The cases arising over the admissibility of the declara tions of a former owner against a purchaser for value, have no application to this case. When the issue is whether a grantee or vendee purchased in good faith, the mere declarations of the former owner are inadmissible to prove the fraud, or bad faith of the purchaser. When it is necessary to establish the fraud of the grantor, or vendor, and also the fraud of the grantee, or vendee, two issues are presented. The declarations of the grantor, or vendor, are competent to establish Ms fraud, but incompetent to establish the fraud of the grantee, or vendee, and in such a case, the declarations must be limited to their proper purpose. The rule applicable to this case is stated in Von Sachs v. Kretz (72 N. Y., 548). Mo error was committed in receiving this evidence.
For the purpose of showing the fraudulent intent of toe assignors, it was competent to prove that they omitted property from their schedules. The property mentioned by the witness Bates was not on the schedules, and it was competent to show that it was in the possession of one of the assignors before and after the assignment, and also to show that one of the assignors said, prior to the assignment, that it was his. It was also competent, for the same purpose, to show that within ten days after the assign ment, one of the assignors had several hundred dollars in money in his possession. How valuable this evidence may have been, depends entirely upon the circumstances. If it was not money that should have been turned over to the assignee, it was easy for the assignor to explain how he acquired it
It was not only competent,, but potent evidence, to show by the assignors’ own books, that they, as executors, kept an account with their sisters showing their indebtedness to them, but that no such account was kept with the brothers out of which the consideration of the bond could be raised. And so it may be said generally, that the written declarations of Wilkinson & Co. entered in their books in the due *304 course of business, prior to the assignment, were admissible to show whether there was any indebtedness of any kind, and to the amount recited in the bond. These declarations are competent for the purpose of showing the assignors’ fraud, and are admissible under the same rule by which oral declarations are admissible. As said before, if the facts and declarations of the assignors prior to the assignment, and indicative of fraud, may not be proved in an action brought to set aside an assignment for the fraud of the assignors, then no action can be maintained to set aside an assignment, no matter how fraudulent the purpose of the assignors may have been.
A great number of exceptions were taken to the rulings upon the admission and objection of evidence, many of which are casually discussed in the appellants’ points. After an examination of all of them, we find none that are erroneous, within the rules applicable to the trial of an equity action. Some of the evidence may be material, but it is quite impossible to avoid admitting immaterial evidence in a trial of an issue of this kind, which extends through three weeks.
The judgment should be affirmed, with costs against the appellants personally.
Hardest, P. J., and Boardman, J., concur.