### LUDINGTON v. THOMPSON.

(Supreme Court, Appellate Division, First Department. April 24, 1896.)

1. RECEIVERS—VOID APPOINTMENT—CONTRACT.
   An insolvent estate is not liable for money loaned to one acting as its receiver, on receiver's certificates, where the orders appointing the receiver and authorizing the certificates, respectively, were subsequently declared void, and the order authorizing the certificates was not proven.

2. NEGOTIABLE INSTRUMENTS—WAIVER OF PROTEST.
   Where the secretary of a corporation, while also acting as receiver thereof under a void appointment, as secretary, waived protest of notes

on which the corporation was liable, the waiver was binding on the cor-
poration.

3. INSOLVENCY—CLAIMS OF CREDITORS—LIMITATIONS.
　The statute of limitations ceases to run against claims against an in-
solvent estate on the appointment of a receiver.

Action by Marietta Ludington against Daniel G. Thompson, re-
ceiver, on notes on which defendant's insolvent was liable as maker
and indorser, and for money loaned to defendant's predecessor for
the insolvent estate. A verdict was rendered, by direction of the
trial court, for plaintiff, for the amount found due. Motion by de-
fendant for a new trial, upon exceptions taken at the trial, and
ordered to be heard in the first instance by the appellate division of
the supreme court, under Code Civ. Proc. § 1000. Granted, unless
plaintiff stipulates that the verdict be reduced so as to cover the
amount due on the notes alone.

The action was brought upon eight promissory notes, some of which were
made by the corporation of which the defendant is the receiver, and others
were made by third parties and indorsed by the corporation, and for money
loaned and advanced by plaintiff. The notes matured during the months
of September, November, and December, 1887, and January and March,
1888, and the money was loaned and advanced in November, 1887. The
corporation was engaged in the business of the manufacture of pianos. Oc-
tober 12, 1887, the corporation being insolvent, proceedings for a voluntary
dissolution were commenced, and Gustavus Baylies, Jr., who then was, and
always had been, the secretary of the corporation, was appointed receiver
thereof by the supreme court. He gave security, qualified, and on the same
day took possession of the property of the corporation, of value of upwards
of $100,000, and continued to act as such receiver until February, 1888.
While he was acting as such receiver, and before all the notes had matured,
he made and delivered to the plaintiff, who was the holder of all the notes,
a writing, signed by him, as secretary of the corporation and also as receiver
thereof, wherein he waived protest of the notes, and consented that the
holder of them might receive part payment of the same, and might extend
the time for the payment of the balance, without affecting the legal liability
.of the corporation as indorser upon the notes. Some of the notes were duly
protested. They were all made or indorsed by the corporation. While Bay-
lies was acting as receiver of the corporation, and on November 11, 1887, the
plaintiff loaned and advanced to him $1,500, and took his certificates as re-
ceiver therefor, which provided for the payment of the money on or before
the first Monday of April, 1888, and recited that they were issued under an
order of the supreme court, entered October 21, 1888, authorizing the issue
of the certificates for amounts aggregating not to exceed $25,000, for the
purposes specified in the order, and declared that the amounts of such cer-
tificates were debts of the receiver, incurred for the benefit and protection
of the property of the corporation in the hands of the receiver, and were a
lien and charge upon the property prior to all other liens and charges. The
order under which the certificates were said to have been issued was not
put in evidence, and the certificates were offered and received merely as evi-
dence of the receipt of the money by the receiver from the plaintiff. In Feb-
ruary, 1888, the court made an order annulling and setting aside the order
of October 12, 1887, appointing Baylies receiver, on the ground that the
petition upon which it was made was insufficient, and declaring the order
to have been null and void, and quashing the petition and all subsequent
proceedings thereon as null and void, and thereafter, and on January 23,
1891, the court, upon an accounting by Baylies as such receiver, ordered
judgment against him for $194,414.39. February 29, 1888, this defendant
was appointed receiver of the corporation, which was dissolved, and he has
qualified, and ever since has been acting as such receiver. September 10,
1888, plaintiff filed with this defendant, receiver, a claim for the amount of

the notes and the money loaned and advanced to Baylies as receiver. In 1891, the defendant, receiver, by order of the court, declared and distributed a dividend of 20 per cent. to and among the creditors of the corporation, and in his petition for such order the receiver disallowed plaintiff's claim, and refused to pay the plaintiff anything thereon. The plaintiff did not learn of the disallowance of his claim by the receiver until some time after the dividend of 20 per cent. had been paid, but within two years thereafter. May 25, 1895, the court, by order, allowed the plaintiff to bring this action against the receiver, and the action was actually commenced June 5, 1895. The defendant, among other things, denied protest and waiver of protest of the notes, and alleged payment of the claim, and set up the statute of limitations. There was, on the trial, a conflict of evidence as to the payments alleged to have been made on account of the claim, and the jury were instructed to find the amount remaining unpaid, and to render a verdict therefor in favor of plaintiff, and the verdict was for $7,516.21.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Lyman W. Redington, for plaintiff.

George Putnam ·Smith, for defendant.

WILLIAMS, J. We do not see how there could be any recovery, upon the evidence given on the trial, for the $1,500 loaned and advanced by the plaintiff to Baylies, who was acting as receiver. The order appointing him receiver was null and void, and had been so declared by the court. He was not, therefore, a lawful receiver when the loan and advance was made. He was simply a temporary custodian, appointed without authority of law. He had no authority to bind the estate in any way by the borrowing of money or the issue of certificates. Moreover, it was not proven, at the·trial, that there was any order of the court authorizing or directing the borrowing of money, or the issue of certificates therefor. Upon this state of facts the defendant could not be held liable for the $1,500 sought to be recovered as for money loaned and advanced.

The notes were concededly made or indorsed by the corporation before its dissolution. Some of the indorsed notes were duly protested, and as to the others there was a waiver, signed by Baylies, both as secretary of the corporation and as its receiver. While he had no authority to bind the corporation as receiver, yet the corporation had not been dissolved, Baylies was its secretary, and we think he had power and authority to make the waiver, and that such waiver was sufficient to bind the corporation, and charge it as indorser upon the notes, and that no protest of the notes thereafter maturing was necessary. The waiver was not a release or abandonment of a substantial right or interest of the company. It was the waiver of a technical right, which was practically formal, and really saved the company the small amount of protest fees. And, further, when the waiver was made, the company being in the hands of a receiver it was well known that the notes were not going to be paid, and therefore the notice of protest would be of no value, in view of the situation.

The only defense to these notes, if any, is the statute of limitations. This action was not commenced until more than six years had elapsed after the maturity of the notes, and it is therefore insisted,

in behalf of the defendant, that the statute of limitations is a complete defense to the action so far as the notes are concerned. The present receiver was appointed February 28, 1888, and we assume that the corporation was dissolved at the same time. Some of the notes had then matured. Some had not. The statute of limitations had then been running but a few months, at most, as to any of the notes. As to some of them it had not commenced to run at all. There has never been any injunction issued by the court restraining the commencement of an action against the corporation or its receiver to recover any debts owing by the corporation. No action could have been brought against the corporation itself after its dissolution. An action could at any time have been commenced against the receiver, as plaintiff has finally done now. It would have been necessary to obtain leave of the court to bring an action against the receiver, as plaintiff did before commencing this action.

It is said, however, in behalf of the plaintiff, that, upon the dissolution of the corporation, and the appointment of a receiver, the statute of limitations ceased to run upon these notes until the rejection of the plaintiff's claim thereon, presented to the receiver, and the refusal by him to allow the same, or to pay a dividend to plaintiff, which was certainly as late as 1891, and within six years prior to the commencement of the action. This contention is based upon the claim that the receiver was a trustee for the benefit of the creditors of the estate, and that the statute of limitations did not run in his favor against the creditors, his cestuis que trustent, until the rejection of, and the refusal to pay, these claims. In Kirkpatrick v. McElroy, 41 N. J. Eq. 555, 7 Atl. 647, it is said by Depue, J.:

"As a general rule, the mere appointment of a receiver to take charge of property in dispute will not suspend the operation of the statute [of limitations], nor will it interrupt the possession of a stranger, so as to prevent the statute conferring title on him or suspend the running of the statute against a stranger. But, where the receiver is appointed to take charge of an estate for the purpose of administering it, as, for instance, the settlement of the affairs of a partnership, and the payment of firm debts, the suit being substantially for the benefit of all the creditors, in analogy to an ordinary creditor's bill, the appointment of a receiver with such powers will suspend the running of the statute, and the lapse of time before proceeding against the receiver in the court by which he was appointed will be regarded only on the question whether the creditor has been guilty of laches in delaying the prosecution of his demand."

In Von Sachs v. Kretz, 72 N. Y. 556, Andrews, J., said:

"The assignee of a bankrupt stands in a position of trustee for his creditors, and the statute [of limitations] did not run against their claim against the estate of the bankrupt not barred at the time of the adjudication," —citing Parker v. Sanborn, 7 Gray, 191, Ex parte Ross, 2 Glyn & J. 46, 330, and Minot v. Thacher, 7 Metc. (Mass.) 348.

In Parker v. Sanborn, a Massachusetts case, Metcalf, J., said:

"After the property of an insolvent debtor has been assigned under the insolvent laws, and thus sequestered and placed in the custody of the law in trust for his creditors, the statute of limitations does not run against their claims upon his estate in the hands of the assignee. The assignee, in bringing a suit upon a demand which was due to the insolvent before the commencement of the proceedings in insolvency, represents the estate,

and in such a suit all claims of the defendant may be set off which existed at the time of the first publication of notice. A claim against the estate of a debtor in the hands of his assignee stands upon a different ground, in this respect, from the right of action against the debtor personally. That right is not taken away or suspended by the proceedings in insolvency, and is therefore barred by the lapse of the usual period of limitation."

In Minot v. Thacher, also a Massachusetts case, Dewey, J., said:

"By force and effect of the appointment of a messenger [in proceedings in insolvency], and the publication thereof conformably to the statute, the property of the insolvent is sequestered for the benefit of the then existing creditors. After such publication, a suit by a creditor would be of no avail, as the property is all transferred to an assignee, and the body of the debtor is to be discharged from arrest on execution. The debts presented for allowance against the insolvent are to be considered with reference to their validity at the date of the publication by the messenger. If they are found to be barred by the statute of limitations at that period, it would, of course, be competent for the assignee to object to their allowance."

In Ex parte Ross, the vice chancellor said:

"After a commission [in bankruptcy] issued, the statute of limitations does not run against a creditor, the commission is a trust for the benefit of all creditors, and it is a known principle that the statute does not run against a trust."

And on appeal the chancellor asserted the same doctrine.

These cases appear to lay down the rule that where, by any form of proceedings, the property of a debtor is taken possession of by the court, to be administered for the benefit of all his creditors, and to be distributed among them in payment for their debts, the statute does not run against any debts which were not barred by the statute at the time possession of the property is taken by the court; and this rule would seem to be applicable to the appointment of the receiver in this case. The receiver here was appointed in proceedings for the dissolution of the corporation. He took possession of all the property, and held it in trust, to be distributed among all the creditors existing at the time of the appointment of the receiver; and the true rule is, under such circumstances, that the running of the statute is suspended from the time of the appointment of the receiver.

Our conclusion is that the statute of limitations does not constitute a defense to the plaintiff's right of action upon the notes. The plaintiff was therefore entitled to recover upon the notes, but was not entitled to recover for the $1,500 loaned and advanced to Baylies while he was acting as receiver of the corporation.

It was erroneous to permit the jury to render a verdict for the amount of money loaned and advanced, and such verdict should be set aside, and a new trial ordered, with costs to abide event, unless the plaintiff stipulates that the verdict be reduced so as to cover the amount due upon the notes alone. The plaintiff should have an opportunity, if he desires, to retry his case, and to give further proof than he gave upon this trial with reference to his right to recover the moneys loaned and advanced. All concur.