JOHN D. MERKLE, Respondent, *v.* JAMES F. BEIDLEMAN and Others, Appellants, Impleaded with Others.

*Evidence — declarations, as to the equitable rights of a third person in a bond and mortgage, made by a deceased mortgagee, are competent against her assignee.*

Where, in an action brought to foreclose a mortgage which had been assigned by the mortgagee to the plaintiff, one of the defendants alleges an agreement made between himself and the mortgagee by which the latter, for an adequate consideration, agreed to transfer said bond and mortgage to such defendant, and there is evidence tending to show that the plaintiff took the assignment with knowledge of the equitable rights of such defendant in the mortgage, and that neither it nor the bond to which it was collateral was ever delivered to the plaintiff, the plaintiff must be regarded as standing in the position of his assignor; and declarations made by the latter, who had died prior to the trial, to the effect that the mortgage belonged to said defendant, and that she had given it to him in payment for services rendered, or that she was to give it or had agreed to give it to him, are competent against the plaintiff.

MERWIN, J., dissented.

APPEAL by the defendants, James F. Beidleman and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 6th day of October, 1897, upon the decision of the court rendered after a trial at the Chemung Special Term.

In March, 1885, the defendants and appellants, James F. Beidleman and Maria, his wife, executed and delivered a bond and mortgage for the sum of $700 to Eliza Beidleman, the aunt of James F. Beidleman.

In July, 1895, Eliza Beidleman assigned such bond and mortgage to the plaintiff, John D. Merkle.

As to the consideration therefor the plaintiff testified as follows: "I paid money for that assignment; I bought the seed or lent her money to buy the seed to seed the place before she left there, and I took it with the understanding of helping her. The only money I remember letting her have for this assignment was on the seed, about $20. I think that was every penny in money; I think she came to my house about the 14th of October, and she died in November, about four weeks afterwards. I parted with value for this mortgage other than the twenty dollars in money; I was to keep the old lady; she came there to live; she was there four weeks."

And again he testifies: "I was to take her and take care of her and keep her until she died, and pay her funeral expenses and any bills that accumulated; I agreed to take her for what there was in the mortgage and take care of her, and she was to come and live with us, and I was to pay the funeral expenses and pay all there was before her death; I was to pay the doctor's bills; and I was to furnish medicine and any help that was necessary to take care of her. * * * I did those things, and I paid for what she owed to two different parties after she died."

Eliza Beidleman died sometime in November, 1895.

This action was commenced by the service of a summons and complaint on the 20th of November, 1895, for the foreclosure of such bond and mortgage.

The defendant James F. Beidleman, in his answer, claims that there was an agreement between himself and Eliza by which he agreed to take charge of her farm, attend to all her business, lease said farm, make contracts for the working thereof, and, in general, take charge of her business affairs, and that in consideration thereof the said Eliza covenanted and agreed to transfer to him the bond and mortgage in question; that he performed his part of the contract, and he claims that, at the time of the transfer of the bond and mortgage to the plaintiff, he, the defendant James F. Beidleman, was, in equity, the owner and holder of said mortgage; and he asks as affirmative relief that the plaintiff be ordered and directed to transfer and assign said bond and mortgage to him, the said defendant James F. Beidleman.

Upon the trial there was evidence tending to show that the defendant James F. Beidleman took care of the farm and garden of said Eliza during her lifetime, and looked after her business generally. Evidence was also given by several witnesses of declarations made by Eliza in her lifetime to the effect that the mortgage belonged to James F. Beidleman, and that she had given it to him in payment and satisfaction of services rendered by him for her, or that she was to give or had agreed to give such mortgage to him; the testimony of the witnesses varies somewhat as to whether she said she had given it to him, or whether she said she was to give it to him. This evidence was received under objections by the plaintiff, and was thereafter, upon his motion, stricken out.

There is evidence in the case tending to show that the plaintiff knew, before he took the assignment of the mortgage, of the claim of the defendant James F. Beidleman, that the same had been or was to be given to him by his aunt Eliza.

The bond and mortgage seem never to have been delivered either to the plaintiff or to the defendant Beidleman, but was found with other of her effects after her death, and was then turned over to the plaintiff.

The court rendered judgment in favor of the plaintiff, and from such judgment this appeal was taken.

*Frederick Collin,* for the appellants.

*Edward G. Herendeen,* for the respondent.

HERRICK, J. :

" By repeated decisions of this court the doctrine is established that the assignee of a mortgage takes it subject to all of the equities existing between the original parties thereto, and, so far as the remedy thereon is concerned, stands precisely in the shoes of his assignor." (*Bennett* v. *Bates,* 94 N. Y. 354.)

The claim of the defendant in this case is that, for services rendered and to be rendered by him to the mortgagee, it was agreed that the bond and mortgage in question should be surrendered to him ; and that he rendered and performed such services.

Practically, the rendition of such services under such an agreement would constitute a payment of the mortgage, and constitute an equitable claim, at least, which he could have enforced against the mortgagee in her lifetime while she was still the holder of the mortgage. The fact that no written assignment or satisfaction or indorsement of payment was made, makes no difference.

When a mortgagee agrees that a debt due by him to the mortgagor shall be applied in payment of the mortgage, the omission of the former to indorse the payment on the mortgage does not alter the effect of the agreement as a payment, and an assignee of the mortgage takes it subject to the payment. (*Holcomb* v. *Campbell,* 118 N. Y. 46 ; *Bennett* v. *Bates,* 94 id. 354.)

The plaintiff then took the mortgage subject to that equity of the mortgagor ; he knew, or at least there is evidence tending to show that he knew, of the claim of the defendant James F. Beidleman.

The amount paid by him at the time of receiving the assignment was trifling.

He was not, I think, a *bona fide* holder for value.

Under such circumstances it seems to me that declarations of the mortgagee made before the assignment to the plaintiff, tending to prove the defendant's defense, she being now dead, were admissible.

I shall not attempt at this time to review the many decisions in this State, and elsewhere, as to when evidence of the declarations of a former owner of property is or is not admissible against his assignee. We have recently discussed, to some extent, the question of the admissibility of such evidence in the case of *Sparling* v. *Wells* (24 App. Div. 584).

There is much confusion and some, at least, apparent conflict in the cases, and, instead of reviewing them, it is, perhaps, better to endeavor to ascertain the principle upon which such testimony has been excluded, and see whether such principle is applicable to the facts in this case.

The cases of *Booth* v. *Swezey* (8 N. Y. 276); *Tousley* v. *Barry* (16 id. 497); *Van Sachs* v. *Kretz* (72 id. 548); *Clews* v. *Kehr* (90 id. 633), are samples of cases in which the declarations of the vendor of the chattels, before he parted with his interest, have been held not to be admissible against his vendee or assignee.

The leading authority in this State for the exclusion of such testimony is *Paige* v. *Cagwin* (7 Hill, 361), and it is cited as the authority for all subsequent decisions in this State upon that question, "and is regarded as establishing the general rule that the declaration of a vendor of chattels, or the assignor of a chose in action, made before he parted with his interest therein, are inadmissible against his vendee or assignee." (*Von Sachs* v. *Kretz*, 72 N. Y. 548.)

It is a case that has been criticized and distinguished, but the principle upon which it excluded the admissions or declarations sought to be admitted has remained unquestioned.

An examination of the case of *Paige* v. *Cagwin*, and the principle upon which it was decided, will obviate the necessity of a separate examination of the other cases that I have referred to as establishing the same principle, and others of a like character to be found in our reports.

The declarations or admissions in that case were those of one Van Dyke, a former owner and holder of a negotiable promissory note, made while still the owner and holder thereof.

Senator LOTT, who delivered the principal and prevailing opinion, said : " It is a well-settled rule that the best evidence is to be produced of which the nature of the case admits. Phillips, in his Treatise on Evidence, says : ' It is a general principle in the law of evidence that if any fact is to be substantiated against a person it ought to be proved in his presence, by the testimony of witnesses sworn to speak the truth, and the reason of the rule is because evidence ought to be given under the sanction of an oath, and that the person who is to be affected by the evidence may have an opportunity of interrogating the witness as to his means of knowledge and concerning all the particulars of the fact. Hearsay evidence of the fact is, therefore, not admissible.'

" In the present case the genuineness of the note was not called n question. The making of it was clearly proved. Van Dyke was, therefore, a competent witness, and the plaintiff was entitled to have his declarations on oath.    *   *   *

" The testimony offered would have been hearsay evidence merely." The distinguished senator cited a number of cases to sustain the principles enunciated by him.

Again, it has been said that the great objection to the admission of evidence of declarations of this kind is that " it seeks to establish by hearsay or secondary evidence what can be shown by better and more satisfactory proof." (*Foster* v. *Beals,* 21 N. Y. 247.)

Undoubtedly, that is so when the person making the declaration is living and can be produced as a witness, but that reason fails when he is dead.

Strictly speaking, it is not hearsay evidence.

It is not what some third person, a stranger in interest, was overheard to say about property, but what the owner himself said, not in his own interest, but against it, and it is at once both a fact and the evidence of a fact.

If the person making the declaration were living and brought the action himself, it would be admissible against him as a fact, and it should be against one who stands in his place, particularly with notice.

If living he could be sworn as a witness to the fact or facts, of which his declarations or admissions are evidence, but which, he being living, are secondary evidence; but he being dead, it is no longer secondary evidence, for secondary evidence presumes that better can be had, to wit, the testimony of the person himself as to the fact; he being dead, his statement as to the fact is the best evidence remaining. It is what the case of *Paige* v. *Cagwin* says a party is entitled to have produced against him — " the best evidence    *    *    *    the nature of the case admits."

And the fact that the statement or declaration was against his interest is evidence of its truth that, under the circumstances, takes the place of the oath of the declarant that cannot now be had.

And the extreme improbability of the falsehood of such evidence renders the declarations made by persons with competent knowledge of the facts, since deceased, against their pecuniary or proprietary interest, exceptions to the rule rejecting hearsay evidence. (Tayl. Ev. § 668; Whart. Ev. § 1156; Greenl. Ev. §§ 147, 148; Steph. Dig. Ev. chap. 4, art. 28; *White* v. *Chouteau*, 10 Barb. 202; *Bump* v. *Pratt*, 84 Hun, 201; *Swan* v. *Morgan*, 88 id. 378.)

In *Lyon* v. *Ricker* (141 N. Y. 225) the court said as to the declarations of a deceased grantor made when in possession of real estate, in relation to his title thereto, " they were made by a party while in the possession of the real estate, and in relation to his title, and they were made against his interest, and he was deceased at the time the proof was given. In such cases declarations of a deceased person may be given in evidence even in actions between third parties."

It is true that that was in an action in relation to real estate, and this is one in regard to personal property, but it is personal property of a nature which affects or may affect real estate.

But the principle is the same, whether relating to real or personal property. Undoubtedly a different rule has, to an extent at least, been applied in actions relating to real estate from that applied in those relating to choses in action.

Senator LOTT in *Paige* v. *Cagwin (supra)*, referring to that distinction said : " It was said, I am aware, by Mr. Justice BRONSON, in *Beach* v. *Wise* (1 Hill, 612), a case like the one under consideration, that if it were an original question, he should be unable to see any solid distinction between cases relating to real property, where

the declarations of the former owner are constantly admitted, and those relating to choses in action and other personal property; and he put his judgment on the sole ground that the point had been adjudged against the defendant in that case by those who had gone before him in the court. I admit that there is no solid distinction in principle between the cases referred to by the learned judge, but I by no means admit that the rule as applicable to personal estate should be altered. On the contrary, it appears to be an anomaly in our law, if, by the rules of evidence, titles to real estate can be made to depend on the mere declaration of a prior owner, when every contract for the sale of land is required to be in writing, and title can only be conveyed by deed. There would in my judgment be much more propriety in excluding such declarations as affecting real estate than in admitting them as to personal property. But I do not concede that such declarations are now admissible to affect the *title* to lands, although they may be admitted to explain the character *of a possession.*"

But as we have seen in *Lyon* v. *Ricker* (*supra*) it has been decided, and must now be considered the settled law of the State, that declarations of a deceased person made while in possession of real estate, in reference to his title thereto, which were against his interest, are receivable in evidence where such title is in question, even in actions between third persons.

It is desirable that the same principle shall be applied to both classes of cases, those relating to personal as well as those relating to real property, and that no distinction should be made except when necessary.

There is some reason for excluding such evidence in the case of commercial paper, and of many other kinds of personal property, where the title of the possessor does not necessarily depend upon that of his vendor or assignor, or where it is not practicable to make inquiries in regard to it of any one but the possessor.

It was said in *Paige* v. *Cagwin* (*supra*), " Where a person becomes a purchaser of a chose in action or a chattel for a valuable consideration, his rights are independent of the assignor and beyond his control. Although it may be necessary to found his title on a transfer, yet the mere proof of such transfer is evidence of his right. Personal property is frequently acquired by delivery merely. Pos-

session alone is then *prima facie* evidence of title, and the rights of the possessor do not necessarily depend on the title of the person by whom the delivery was made, or from whom such possession was obtained."

In the case of a mortgage it is different from what is there said; the rights of the possessor do depend upon the title of the person by whom the delivery is made or from whom such possession is obtained, because the assignee of a mortgage takes no better title than his assignor; takes it subject to all the equities existing between the original parties, and "must always abide by the case of the person from whom he buys." (*Schafer* v. *Reilly,* 50 N. Y. 61; *Viele* v. *Judson,* 82 id. 32; *Owen* v. *Evans,* 134 id. 514.)

Then, too, mortgages generally pass by written assignment and not by mere delivery, and mere possession does not afford the same evidence of title as does the possession of ordinary chattels. Persons purchasing mortgages can generally protect themselves by inquiring of the mortgagor whether such securities are valid; and if they purchase upon the representation that they are valid, the mortgagors will be estopped from setting up the contrary. (*Westfall* v. *Jones,* 23 Barb. 9, and cases cited; approved in *Hill* v. *Hoole,* 116 N. Y. 299.)

For these reasons, and from the fact that in this case the person making the declaration or admission is dead and cannot be summoned as a witness, while in the case of *Paige* v. *Cagwin* he was living and could be sworn, and that in this case the assignee had notice of the defendant's equities or claims, while in the case of *Paige* v. *Cagwin* it does not appear that the holder of the note had any such notice; and that in this case the title of the assignee necessarily depends upon the title of the person from whom he acquired it, while the case of *Paige* v. *Cagwin* was in relation to a kind of personal property, the title to which in an assignee or holder does not necessarily depend upon the title of the person from whom he acquired it, I think the ruling in the case of *Paige* v. *Cagwin* does not apply to the case at bar, and that the evidence should not have been stricken out, but considered by the court; what effect should be given to it is a question not now before us.

Much has been said by the courts of the dangerous character of this kind of evidence, of the danger of mistakes in repeating admis-

sions or declarations, and of the liability of the witness having mis-apprehended what he heard; all that applies to the force or weight to be given to the evidence when received, but does not affect the question of its admissibility.

The judgment should be reversed and a new trial ordered, costs to abide the event.

PUTNAM, J., concurred; PARKER, P. J., and LANDON, J., concurred in result; MERWIN, J., dissented.

LANDON, J.:

I concur in the result.

The assignor never delivered the bond and mortgage to the plaintiff. The plaintiff is, therefore, chargeable with notice of any defect in her title thereto. (*Kellogg* v. *Smith*, 26 N. Y. 18.)

Besides, the plaintiff had actual notice that the defendant claimed some equitable interest therein. The plaintiff thus stands in the shoes of his assignor; and as he knew that the assignor's title was challenged by defendant he has no moral or equitable right to insist that the evidence which would be competent against her is not also competent against him.

Thus the doctrine stated by Greenleaf and quoted in *Paige* v. *Cagwin* (7 Hill, 375), though not applicable to the case there, is applicable here, namely: An assignee is in certain cases bound by the previous admissions of the assignor "where there is an *identity of interest* between the assignor and assignee. * * * Such identity is deemed to exist not only where the latter is expressly the mere agent and representative of the former, but also where the assignee has acquired a title, with actual notice of the true state of that of the assignor, as qualified by the admissions in question, or where he has purchased a demand already stale or otherwise infected with circumstances of suspicion." (1 Greenl. Ev. 227, § 190.)

We can see in the case of a promissory note that the mere fact that it was transferred after maturity is not enough to taint it with its former holder's disparaging declarations respecting it, when these are unknown to the transferee, provided he was a *bona fide* purchaser for value; but if he had notice of them, or of a claim of the maker adverse to the title he was purchasing, then we can also see that his volunteer purchase with such notice should not put him in

any better position than was his assignor, and should not prejudice the maker in respect of the evidence which supports his claim or equities.

As I understand the opinion in *Paige* v. *Cagwin*, it does not question the rule above quoted, but properly holds that it does not authorize the admission of the declarations of a former holder of a promissory note negotiated after maturity, with no further notice of its invalidity.

Here the plaintiff in addition to constructive notice had actual notice, and he purchased no more than the identical interest of Mrs. Beidleman, with notice that the defendant would probably rely upon her declarations to prove the extent to which she had impaired her interest.

I think it was error to exclude the evidence.

In *Truax* v. *Slater* (86 N. Y. 632) it was held that the mere declarations of the assignor of a chose in action, forming no part of the *res gestæ*, are not competent to prejudice the title of the assignee, whether the assignee be one for value, or merely a trustee for creditors, whether such declarations be antecedent or subsequent to the assignment. The issue there was whether, before the general assignment to the plaintiff, the assignor had made a verbal assignment of that part of the assignor's property which the defendant claimed. It was thus a question whether the defendant had prior legal title. The court held that there was no sufficient evidence of it; that a valid agreement of sale based upon a sufficient consideration must be shown, and this the defendant had failed to do. The plaintiff had the paper title, and the fact that before giving it his assignor had said to a stranger that he had assigned some of his property to the defendant, or would do so, was not of itself any act of sale, or part of it, and, therefore, was not admissible. If any equity of the defendant in support of the alleged sale to him known to the plaintiff, or as to which he should be held to have volunteered to take the risks, had been shown, a question like that in *Von Sachs* v. *Kretz* (72 N. Y. 548), and like the case before us, would have been presented.

Judgment reversed, and a new trial granted, costs to abide the event.