## James Hollingsworth *against* Andrew Napier.

If a vendor de-liver to his ven-dee, a bill of parcels for goods lying in a pub-lic store, toge-ther with an or-der on the store-keeper for their

TROVER to recover the value of ten bales of cotton, bought under the following circumstances.

The defendant had sold the property in question, which was then lying in the public store at the quarantine ground, to one *Kinworthy*, for cash payable on delivery, in conse-quence of which, a bill of parcels had been made out, mark-

ed in the margin, " cash," but containing no receipt for the money. This, together with an order on the store-keeper for the cotton, had, either by the defendant or his clerk, been given over to *Kinworthy.* He, without either paying for the articles, or having taken possession of them, met the plaintiff at a public house, and, producing the bill of parcels and order, offered them for sale at the same price for which they had been bought, alleging as a reason, that he was pushed for money. The plaintiff on this, agreed to become the purchaser, received the bill of parcels and order, and paid for the goods, by giving a part of the consideration money in cash, and the residue in a check borrowed from a Mr. *Peter Hyde.* Having finished this transaction, *Hollingsworth* went to the quarantine ground the very next day, but at so late an hour that, from the usual course of business, it was impossible to have shipped the goods that night, and, producing the order demanded the cotton, on the turning out of which to him, he paid the amount of storage, had the bales marked with his initials, and then returned into the public store. The morning after this had taken place, the defendant went to the quarantine ground, took the cotton from the store-keeper, and sold it.

ALBANY,
August, 1805,

Hollingsworth
v.
Napier

*delivery, the vendor's right of stopping in transitu is gone against a third person, purchasing bona fide for a valuable consideration, and tho' there be some suspicious circumstances attending the transaction, yet, if they have been fairly submitted to a jury, the court will not intend there was any fraud, so as to warrant a new trial.*

At the trial of the cause, the jury, under the direction of the judge, that the order to the store-keeper was a delivery, found for the plaintiff.

The application now was, to set aside this verdict, as contrary to law, and on account of having newly discovered, that no person of the name of *Peter Hyde* had ever kept any account with either of the banks in *New York*, and that the defendant hoped, from information related to him, to prove that the cotton had been obtained from him, in consequence of a preconcerted plan between *Hollingsworth* and *Kinworthy*, to the former of whom the latter had been long indebted, to satisfy the demand on which account, the goods in question had been fraudulently transferred, without any consideration having ever passed at the pretended time of sale.

*Caines*, for the defendant, argued that the circumstances of the case warranted a presumption of fraud. That *Kinworthy* having acquired no legal property in the goods,

either by payment, or taking possession, could transfer none to *Hollingsworth*, who claimed only by virtue of the order from *Napier* to the store-keeper, which not being negociable, must have been taken subject to all the equities that might have been urged against it in the hands of the original holder. That against him the privilege of stop‑ping in *transitu* existed in full force, being founded on legal rights; for, as payment was a condition precedent in all sales, stopping in *transitu* was a legal right depending on the laws of property. *Cowper* v. *Andrews, Hob.* 41. *Burg‑hall* v. *Howard*, 1 *H. Black,* 365 (*n*). *Openhein* v. *Russell,* 3 *Bos.* & *Pull.* 49. It therefore will support trover. *Botlingk* v. *Inglis*, 3 *East* 381. That consequently the only right the plaintiff could acquire by the purchase, was an equitable one, in virtue of his consideration money paid; but that, as equitable claims could never overreach legal titles, the right of the defendant was as good against *Hollingsworth*, as against *Kinworthy*. As to the marking with initials, turning out of the store, &c. that he said was immaterial; the same things had been done in *Hodgson* v. *Loy*, 7 *D.* & *E.* 460. The true question was, had the articles reached their destination? for till then every delivery was constructive, and never affected a legal right. If otherwise, the doc‑trine of stopping in *transitu* was at an end, as every de‑livery within the statute of frauds would take it away, and such a position was in the face of every determination on the point, in all of which a constructive delivery had uni‑formly taken place. The affidavit also shewed fresh grounds.

*Woods* and *Hoffman* contra. Fraud is a matter of fact; there are to be sure certain circumstances from whence it may be inferred, but there are none such in the present case, and they must be very strong to take it from the jury to the court. Besides, due diligence is not shewn, and the facts detailed, rest more on the defendant himself than other per‑sons. As to the right of stopping in *transitu*, the order on the store‑keeper was tantamount to an actual delivery. 1 *Lex. Mer. Amer.* 376, 7, and the cases there cited. If so, *Kinworthy* was in possession, and his sale of course effec‑tual. But allowing the delivery to be only constructive, an assignee of the person to whom it was made, and who is

a *bona fide* purchaser, is protected by it. *Abbott* 314.* The goods might indeed be said to have been delivered by *Napier* himself, for it was his agent who gave them up to the plaintiff.

*Harison* in reply. The delivery here relied on, would have been good, as between the original parties, *Napier* and *Kinworthy*, had either one of them come here to enforce the contract, and claim either the money or the goods, by paying the one, or tendering the other. This would have been by virtue of the statute of frauds, and it is to that effect, that the cases in the book referred to, are mentioned. But though this would be a good delivery between the immediate parties, one claiming against the other the benefit of his contract, it does not follow that it can be established between third persons, so as to take away the right of stopping in *transitu*. Such interest as *Kinworthy* had, he sold. That interest was one liable to stoppage in transit; of course his vendee took it subject to the same liability. There is no hardship in this; the rule is *caveat emptor*. Had *Kinworthy* reduced the property into possession, the case would have been different. It is plain a fraud has been committed on the defendant, and he ought not to be precluded from an opportunity of shewing it. As to the store-keeper being the agent of *Napier*, and therefore the goods virtually delivered by *Napier* himself, let it be remembered, the cotton was returned to *that* store-keeper, and if the reasoning of the plaintiff's counsel be good, it was returned into the possession of the defendant, who surely then, had a right to sell, or detain till his consideration money was paid.

*Per curiam*, delivered by SPENCER J. The court are applied to for a new trial in this cause, on the facts stated in the case, and on discovery of new evidence. The plaintiff derives his title to the goods in controversy under *Kinworthy*, and the questions are, whether his fraud infects the plaintiff's title? whether possession followed the sale, so as to destroy the defendant's right to stop the goods in *transitu*? and whether the case is free from the operation of the statute of frauds?

The question of fraud was fairly submitted to the jury. Their verdict shews that they believed the plaintiff, from

the evidence before them, was not a party in *Kinworthy's* fraud on the defendant, and I cannot perceive any reasons for questioning the conclusions drawn by the jury. Fraud is odious, and never to be presumed. The circumstances set up, on which it is to be founded, are too light and evanescent. On this point, therefore, the defendant's application fails.

The plaintiff having, as it must now be intended, fairly gotten possesssion of the order for the cotton, received a delivery of it, and paid the storage. This acquiring of possession took away the defendant's right to stop in *transitu.* The order itself is a delivery, so as to prevent the operation of the statute. *Searle* v. *Keeves,* 2 *Esp. Rep.* 598. But again, the sale is wholly free from that objection, by the delivery of possession under it. With respect to the facts upon which the defendant relies for a new trial, on the discovery of evidence, it is to be observed, that the former was had in *December* last. It would b too loose to set aside the verdict on the mere expectation of a party's being better prepared. There has been abundant time for the defendant to lay before us the facts in the knowledge of his witnesses. This ought to be done on all applications for new trials on discovered testimony ; or, if omitted, good reason ought to be given for the omission. To listen to the application on this ground, would be to grant new trials wherever the party was dissatisfied with the verdict. The facts ought to be strong ones to induce the court to grant a new trial on the discovery of evidence, and the case should be free from *laches.* In the present instance, the defendant is chargeable with delay, and the facts that he expects to prove, for aught that appears, rest in his own credulity.

If it should be admitted that *Hyde* never kept an account with the banks, it does not follow that the testimony given on the trial, is untrue. The witnesses did not say that *Hyde* drew the check, but that he loaned one. This might be, and it is to be presumed, was a check drawn by some other person. In my opinion, the defendant takes nothing by his motion, and such is the judgment of the court.