John N. Bullis et al., Assignees, etc., Appellants, v. Henry B. Montgomery et al., Respondents.

A requisition upon the sheriff in an action to recover the possession of personal property, only protects him in taking the property specified from the possession of the defendant named. Where, however, the actual possession remains in the defendant, although there has been a transfer of title and a constructive change of possession, the process is a protection.

One W. executed to plaintiffs, on a Saturday, an assignment of certain personal property for the benefit of creditors. On the Sunday following plaintiff B. obtained from one of W.'s workmen the keys of the shop where the property was, and that night B. went to the shop,

unlocked and locked the door, but did not go in. Defendants, M. and S., commenced an action against W. to recover possession of the property, claiming to rescind a sale thereof to him for fraud. Under a requisition issued therein to defendant O., as sheriff, he took the property at 1 A. M. Monday. W.'s workmen left the shop as usual Saturday evening, and returning to resume work Monday morning, found the sheriff in possession. *Held*, that, as far as the sheriff was concerned, the property still remained in W.'s possession. Also *held* that declarations of W., made before his purchase of the property of M. and S., were not competent as evidence against plaintiffs, and that upon the examination of W. as a witness, questions as to whether he considered himself responsible, and whether he was of good credit at the time of the purchase, were proper.

· (Argued November 18, 1872 ; decided November 26, 1872.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, setting aside a verdict in favor of plaintiffs, and granting a new trial. (Reported below, 3 Lans., 255.)

This action was brought by plaintiffs' assignees of one Walters to recover possession of certain blacksmith tools and iron, and other property, conveyed by the assignment.

The property was sold in January, 1867, by defendants, Montgomery and Sage, to Walters, upon a credit, they receiving his notes for the purchase-money.

Walters executed an assignment, for the benefit of creditors, to plaintiffs, on Saturday, February 23, 1867. The property was then in Prattsville, Greene county ; the assignment was executed at Poughkeepsie. Bullis, one of the plaintiffs, went to Prattsville, arriving there Sunday afternoon. He found one of Walters' employes, and procured the key of the shop. He unlocked and locked the shop door that night, but did not go in.

Defendants, Montgomery and Sage, commenced an action to recover possession of the property, claiming to rescind the sale thereof, upon the ground that it was induced by fraudulent representations on the part of Walters. A requisition was delivered to defendant, Osborn, who was sheriff of Greene county, and by virtue thereof his deputy took the

goods about 1 A. M. Monday morning. Workmen in the employ of Walters were at work at the shop till Saturday night, and went away expecting to return on Monday morning. They did so return, finding the sheriff in possession. Upon the trial evidence was offered by the defendants to prove, near the time of the sale by Montgomery & Sage to Walters, his declarations that he intended to cheat them out of the property. The evidence was excluded.

Walters was sworn as a witness for plaintiffs, and was asked whether, at the time of the purchase by him, he considered himself responsible and was of good credit. Motions were made to dismiss the complaint as to Osborn, upon the ground that he was sheriff, and only acted as expressly commanded by the process.

The jury rendered a verdict for plaintiffs. Exceptions were ordered to be heard at first instance at General Term.

*John H. Reynolds* for the appellants. The offer to prove the declarations of Walters was properly overruled. (*Cobb* v. *Hatfield et al.*, 46 N. Y., 533.) A witness charged with fraud may state whether, in a given transaction, he intended to defraud. (*McCracken* v. *Cholwell*, 8 N. Y., 133; *Seymour* v. *Wilson*, 14 id., 567; *Griffin* v. *Margaret*, 21 id., 121; *Forbes* v. *Waller*, 25 id., 430.) The sheriff was as liable for taking the property as the other defendants, and it was right for the jury to decline to discharge him. (*Stimpson* v. *Reynolds*, 14 Barb., 506; *King* v. *Orser*, 4 Duer, 431; *Kahlman* v. *Orser*, 5 id., 543; *Marsh* v. *Backus*, 16 Barb., 583.)

*Samuel Hand* for the respondents. The court erred in refusing to dismiss the complaint as to the sheriff, Osborn. (*Foster* v. *Pettibone*, 20 Barb., 350; *Shipman* v. *Clark*, 4 Den., 446; *Lavacool* v. *Boughton*, 5 Wend., 170; Morris on Replevin, 2d ed., 105; Code, § 216.) The court was wrong in excluding the evidence of Walters' declarations of his intent to defraud the defendants in the purchase of the property. (*Adams* v. *Davidson*, 6 Seld., 313; *Brown* v. *Brown*, 34 Barb.) They were admissible as part of the *res gestæ*.

(*Cary* v. *Sprague,* 12. Wend., 41 ; *Kimball* v. *Huntington,* 10 id., 175 ; *Woodhouse* v. *Jones,* 5 N. Y. L. R., 20 ; Cow. & Hill, 278, 279.)

FOLGER, J.   First : Was the process in the hands of the deputy sheriff a protection to him against the action of the plaintiffs ?

It is a familiar principle that process, regular on its face, issued by a court or officer having jurisdiction so to do, is a protection to a sheriff for acts done under it. (*Savacool* v. *Boughton,* 5 Wend., 170 ; *Sheldon* v. *Van Buskirk,* 2 Coms., 473.)   This principle has been applied to the case of a sheriff acting in obedience to a writ of replevin ; even to the extent of holding that the owner of goods taken by him may not maintain an action of trespass against him for taking them, when the writ ran against a third person having them in possession. (*Foster* v. *Pettibone,* 20 Barb., 350.)   And it was intimated in *Shipman* v. *Clark* (4 Denio, 446) that such might be the effect of the sheriff acting under such a writ.   And see *Miller* v. *Davis,* 1 Comyn, 590.

The reason of the doctrine maintained in 20 Barb. (*supra*) is taken from *Hallett* v. *Byrb* (Carthew, 380), where HOLT, Ch. J., says : " And so there is a difference between a replevin and another process of law, with respect to the officers ; for in the first case, viz., in replevin, they are expressly commanded what to take in specie ; but in writs of execution, the words are general, viz., to levy of the goods of the party, and therefore 'tis at their peril if they take another man's goods, for in that case an action of trespass will lie."

It is not necessary to say here whether the ruling in 20 Barb. (*supra*) is correct ; for the reason given for it has ceased in this State.

The Code of Procedure, which in its provisions for the recovery of personal property is a substitute for the former action of replevin (*Nichols* v. *Michael,* 23 N. Y., 269), has changed the terms of the requisition upon the sheriff.   They are no longer limited to a command what to take in specie.

The sheriff is now required to take the property specified, but with the further restrictive requirement to take the same from the defendant. So that the requisition has become more like to the command of an execution to levy of the goods of the party, and like to the command of a warrant of attachment to attach and safely keep all the property of the defendant: And it is held that a sheriff who seizes the goods of another than the defendant in the attachment is liable to the true owner in an action of trespass, (*Rogers* v. *Weir*, 34 N. Y., 463; and see *Commonwealth* v. *Kennard*, 8 Pick., 133, and *Driscoll* v. *Place*, 44 Vt., 252.)

The requisition in the case in hand, directed the sheriff that he take the property in question from Walters, the defendant in that action. It did not protect him, save in taking the property specified, from the possession of the defendant named. To that extent it would protect him. (*King* v. *Orser*, 4 Duer, 431.)

It is not claimed that the sheriff took any property other than that specified. It is claimed that he did not take it from the possession of the defendant named.

This was a question of fact. And if there was no testimony which would sustain the finding of a jury that he did not, the motion to dismiss the complaint as to Osborn should have been allowed.

Can it be said that there is sufficient proof that the plaintiffs were in the actual possession of the property when it was taken by the sheriff's deputy?

The proof from one of the plaintiffs was that Walters executed the assignment on a Saturday; that on the Sunday following, in the evening, he obtained from one of Walters' journeymen the keys to the shop in which was the property; that on the night of that day he went to the shop and tried the key to see if it fitted, and unlocked and locked again the door, but went only to the door, and did not go in. This is the only act of the plaintiffs' towards taking possession which is detailed in the testimony. It is true that the same witness, later in the case, says generally, that he "took possession of

the property the Sunday night I got keys of the *store*," which was the same Sunday night on which he got the keys of the *shop*. This saying went unexplained by any further examination, either direct or cross. If this general statement of the witness was merely his conclusion of what was the effect of the acts detailed by him of the locking and unlocking of the door, there was not in law a taking of actual possession by the plaintiffs, and as being more than the conclusion of the witness, it cannot fairly be construed. He had told what he did. He had said that he did not go into the shop; that he tried the key to see if it fitted; that he unlocked and again locked the door. His subsequent statement, that he took possession, did not add to these details. It is made as to the same time to which those relate. This was at night on Sunday; and at one o'clock on the morning of the next Monday the sheriff took the property by virtue of his process. A journeyman in Walters' employ, who left the shop on the Saturday night, did not know but that Walters was in possession until he returned to it on the Monday morning at seven o'clock, after the sheriff had taken the property. With the testimony thus, the motion was made in behalf of the sheriff that the complaint be dismissed as to him, on the ground that the act for which he, as such sheriff, was sued in this case, was an official act as sheriff and in obedience to the positive directions and requirements of the statute, and that he was not liable in the action.

This motion called on the court to decide whether in law, as the testimony was, the property was taken from the actual possession of the defendants in the process.

The decision of the court, denying the motion, was, in effect, that it was not. We think that this was erroneous. It is manifest that the property had not passed into the actual possession of the plaintiffs. So far as the sheriff was concerned in the execution of the process committed to him, it was still in the actual possession of Walters, whose agents had it in their control at the close of work on Saturday night, and who returned to resume that control on Monday morning, but found it in the custody of the sheriff.

The plaintiffs did indeed have a valid transfer of the title. It may be inferred that, with assent of Walters, they had the keys of the shop, the means of access to the property. They had a symbolical delivery and constructive possession. (*Hollingsworth* v. *Napier*, 3 Caines, 182, and note *a*, and *Dunham* v. *Pettee*, 8 N. Y., 508.) But the actual possession had not departed as yet from Walters.

In considering the testimony touching this point, we have not overlooked the return of the sheriff upon the requisition, in which he certifies that no one was in the actual possession of the property at the time. If this be taken literally, still he is not concluded by it, where his return is set up as his admission. It is then, but *prima facie*, and may be explained. (*Baker* v. *McDuffie*, 23 Wend., 289.) And the other testimony does explain it. It is plain that he meant that when he took the property into his custody, at the early hour on Monday, there was no one then present, exercising the immediate control of it.

Second. Were the declarations of Walters admissible in evidence?

Walters was a competent witness, and was not a party to the action. They were then hearsay evidence, and were not competent unless brought within some of the exceptions to the rule which forbids the use of such evidence. It is suggested that they were a part of the *res gestæ*.

But there is nothing in the case to sustain this. They were made before the sale of the property, not in the progress of the bargaining for it, not so far as appears in reference to an anticipated purchase or bargaining for it, nor while engaged in endeavoring to bring about a sale. In these respects, the case differs from *Crary* v. *Sprague* (12 Wend., 41) and other like cases cited by the defendants.

It is also suggested that there was such a privity between Walters and the plaintiffs, such an identity or community of interest, as made these declarations competent evidence.

There may be such a case (see DENIO, Ch. J., *Brown* v. *Mailler*, 12 N. Y., 118), but this is not it. It exists in the

case of an administrator, the declarations and admissions of whose intestate may be given against him.

But there is no such identity of interest between an insolvent assignor in trust for creditors and his assignee. The latter holds primarily for the creditors, and for these in hostility to the assignor. He does not represent merely or principally the assignor, nor hold chiefly for his interest and benefit, but rather for the creditors of the assignor, and is accountable in the first place to them. *Adams* v. *Davidson* ( 6 Seld., 313) is cited, but that goes no farther than to admit the declarations of an assignor while yet in possession of the assigned property. And its authority seems to have been doubted in *Cuyler* v. *McCartney* (40 N. Y., 221–235).

Third. Walters was asked when on the stand whether at the time of the purchase of the property he considered himself responsible, and whether he was of good credit. An objection was made to the question as a whole. It is now urged that it was improper to permit him to answer what was his credit. It seems to be conceded that it was proper to show his belief in his own pecuniary responsibility; and the question as to his credit does not differ. Each was to the purpose of showing that he did not intend to obtain the property fraudulently, inasmuch as, if he was responsible and of good credit, it needed not that he should have such purpose, or that he should falsely represent.

The order for a new trial should be affirmed against the plaintiffs, in favor of the defendant Osborn, with judgment absolute against them in his favor, in pursuance of their stipulation, with costs; and should be reversed as to the other defendants, with costs to the plaintiffs against them.

All concur. PECKHAM, J., not sitting.

Judgment accordingly.