DETERMINED IN THE

# FIFTH DEPARTMENT

AT

# GENERAL TERM,

## March, 1890.

---

CLARK WOODWORTH, RESPONDENT, *v.* THOMAS C. HODGSON AND ANOTHER, APPELLANTS.

*Bill of sale, without definite bargain as to price, etc., considered to be a chattel mortgage.*

An instrument, in the form of a bill of sale of chattels, in the absence of evidence that there has been a bargain between the parties, by which one should sell and the other should buy them, where it appears that the party receiving the bill of sale has signed, but has not been obliged to pay, negotiable paper for the accommodation of the party giving the bill of sale, is to be treated as a chattel mortgage, and must be filed in accordance with the statute in order to be valid as against creditors.

APPEAL by the defendants from a judgment of the County Court of Monroe county entered, in the office of the clerk of that county on August 30, 1889, and from an order denying a motion for a new trial, made upon the minutes of the court, entered in said office on the same date.

*M. W. Cooke* and *William B. Hale*, for the appellants.

*J. M. Dunning*, for the respondent.

MACOMBER, J. :

This action is brought against the defendants, who are, respectively, the sheriff and deputy sheriff of Monroe county, to recover for the value of a certain stock of groceries claimed by the plaintiff,

and alleged to have been converted by the defendants to their own use. The answer justifies the seizing and disposal of the goods under a judgment and an execution properly issued, the particulars of which it is not necessary to detail. The position of the defendants is, that the property, the value of which is thus claimed by the plaintiff, was fraudulently disposed of by one William A. Woodworth, a son of the plaintiff. The case turns upon this issue.

William A. Woodworth had resided with his father in the town of Gates, adjoining the city of Rochester, when, in the month of November, 1887, he began the business of conducting a grocery store on the corner of Kent and Platt streets in the city of Rochester. To enable the son to start in business the plaintiff executed for his benefit two promissory notes in the sum of $600, upon which the money was obtained for the use of the son. Subsequently the plaintiff signed two letters of credit to certain wholesale grocers in the city of Rochester, by which the son was permitted to purchase goods to the amount of $300, and the payment of the same was guaranteed by the plaintiff. Within a short time the fact was developed that the business was unremunerative, and this was known to the plaintiff. It continued, however, until the evening of the twenty-third of July, when a bill of sale, absolute in its terms, of all the property of the son was executed and delivered to the plaintiff. Thereupon, as is claimed in his behalf, the plaintiff took possession of the store and its contents. It is at this point where the two questions in the case come in. At the close of the plaintiff's case, as well as at the close of the whole testimony, a motion was made in behalf of the defendants, in the one instance for a nonsuit and in the other for the direction of a verdict for the defendants, upon the ground that the taking of the property by the plaintiff under the bill of sale was fraudulent, and that there had been no transfer of possession of it within the meaning of the statute. (2 R. S., chap. 7, tit. 2, §§ 5, 9 [vol. 3 of 6th ed.], p. 143.)

Treating, for a moment, the bill of sale as an instrument, which upon its face it purports to be, a fair question of fact was presented whether or not there had been such a change of possession of property from the son to the father as to satisfy the conditions of the statute. After the bill of sale had been executed by the son at the law office of the plaintiff's attorney, in the evening, the father

and the son and the clerk of the latter went to the store together, and shortly thereafter the father locked the door and handed the key thereof to the son. This was on the evening of the twenty-third of July. The bill of sale was executed about seven o'clock in the evening. After the locking of the door and the delivery of the key to the son, and before the son had opened the store on the following morning, the property had been seized under the execution already mentioned

The learned county judge did not see in this situation of affairs that there was any question of fact cognizable by the jury. In this we think he was in error. The testimony of these two witnesses, father and son, even if they had not been interested in the event of the action, was of such a character, in the most favorable construction of it, as to require the same to be submitted to the jury, and for them to determine whether or not there was an actual change of possession. (*Adams* v. *Davidson*, 10 N. Y., 309; *Bullis* v. *Montgomery*, 50 id., 352; *Tilson* v. *Terwilliger*, 56 id., 273; *Steele* v. *Benham*, 84 id., 638.)

But there is another and more comprehensive reason why this judgment must be reversed. The instrument executed by the son to the father, as has already been stated, was in form a bill of sale, yet it was claimed upon the trial, in behalf of the defendants, that it was designed, at the most, only as security to the plaintiff for the liabilities which he had incurred in behalf of his son, and that it was a chattel mortgage only. The same was not, at any time, filed as a chattel mortgage, and consequently it is insisted, with great force by counsel for appellants, that the instrument was void as to the defendants who represent creditors. Whether or not this was a security or an absolute transfer of property was the most serious question in the case. The plaintiff testified that the first time his son ever spoke to him about a bill of sale or about securing himself for his liability was at his (the son's) house. The fact that the son was doing a constantly losing business was known to the plaintiff. Indeed, the son, according to his testimony, spoke to him two or three times to the effect that he ought to be secured. On the fifteenth of July he says that they came to the conclusion that they would do something about it. The plaintiff then continues: " He had spoken two or three times, not a great while before that, about

securing me.  The interview of July fifteenth was at his house.  The substance of his remarks was like this, that he was sure he was losing ground and wasn't picking up, and he didn't think he could go through; and as I had furnished means for his getting almost everything he had, I ought to be secured.  The security which he wanted to give me was for the letters of credit and notes which I have testified to.  He spoke to me about securing me with a chattel mortgage.  *  *  *  I told him to go and see Mr. Dunning and counsel with him as to the method he should pursue."

It appears, therefore, from the plaintiff's own testimony, that there had been no conversation between him and his son except for his security.  The case is devoid of any evidence, that there had been any bargain between the parties by which the one should sell and the other should buy the stock of groceries.  How could there be a sale without a bargain of some sort?  The talk of the parties seems to have been wholly for the purpose on one side to proffer, and on the other to receive, some instrument, as security only.  When, therefore, this instrument, though absolute in its terms, was executed, and delivered by the son to the father it was as between them a chattel mortgage only; the circumstance that it is in the form of a bill of sale is unimportant.  The true inquiry is, what was it, in fact, as understood by the parties to it at that time?

No moneys were advanced to his son by the plaintiff at any time, but he was liable to be called upon for such advances by reason of his connection with the business paper, and as a guarantor of his son's indebtedness.  The statute is imperative, that an instrument of this description, which is designed for the security of a debt, must be filed in order to be good against creditors.  A bill of sale absolute upon its face, transferring property to be held as security for the payment of a debt due to the vendee, is in character and effect a mortgage, and is to be treated as such.  (*Smith* v. *Beattie*, 31 N. Y., 542.)

The judgment appealed from should be reversed and a new trial granted, with costs to the appellants to abide the event.

DWIGHT, P. J., and CORLETT, J., concurred.

Judgment reversed and a new trial granted, with costs to the appellants to abide event.