COMMERCIAL BANK and MENZO VAN VOORHIS, Respondents, *v.* THOMAS BOLTON and Others, Appellants, Impleaded with HERBERT BEHN, Defendant.

UNION BANK of Rochester, Respondent, *v.* THOMAS BOLTON and Others, Appellants, Impleaded with HERBERT BEHN, Defendant.

*Insolvent debtor — fraudulent transfer preferring one creditor — adequacy of consideration — entries in books of transferror — how far competent against vendee.*

A debtor has a right to transfer his property to any of his creditors, and they may accept it in payment of their debts to the exclusion of other creditors, provided the transfer is made in good faith and has a reasonably adequate consideration.

Where a debtor makes a transfer of his property with intent to hinder, delay and defraud his creditors, and the transferee accepts the transfer to consummate such a purpose, the adequacy of the consideration is immaterial and will not protect the transaction.

On August 2, 1893, Thomas Bolton transferred to his wife and to Frederick A. Sherwood certain personal property in payment of debts which he owed them. An action was brought by certain of his judgment creditors to set aside this transfer as fraudulent. Upon the trial the court, against the objection of Mrs. Bolton and Sherwood, admitted in evidence a statement of his assets made by Bolton in June, 1893, and also his sales book, cash book and ledger, showing the course of his business from that date to August 2, 1893. Upon this evidence, in part at least, the court found the value of his property on August 2, 1893, and also found that the consideration for the sale of the property by Bolton to his wife and to Sherwood was inadequate.

*Held,* that the evidence was admissible against Bolton upon the question of his intent to defraud his creditors, but not against his vendees;

That as against such vendees, who must be deemed to be *bona fide* purchasers, the *ex parte* declarations of their vendor, made prior to the sale, were inadmissible;

That such declarations were no part of the *res gestæ;* that they did not come within the principle which makes the declarations of one person evidence against all in cases where there is a conspiracy, and where several persons are united in seeking to accomplish a common purpose.

APPEAL · by the defendants, Thomas Bolton and others, from a judgment of the Supreme Court in favor of the plaintiffs in the first above-entitled action, entered in the office of the clerk of the county of Monroe on the 16th day of August, 1894, after a trial at the Monroe Equity Term, except that the defendants do not appeal from so much of said judgment as dismissed the complaint as to the defendant Behn.

Also an appeal by the same defendants from a judgment of said court in favor of the plaintiff in the second above-entitled action, entered in said clerk's office upon the same day after a trial at the Monroe Equity Term, except that the defendants do not appeal from so much of the last-mentioned judgment as dismissed the complaint as to the defendant Behn.

The plaintiffs are judgment creditors of the defendant Thomas Bolton.

The Commercial Bank recovered judgments against him September 13, 1893, for $2,115.40; September 20, 1893, for $3,032.30; October 7, 1893, for $4,035.23; and October 30, 1893, for $583.75.

The plaintiff Menzo Van Voorhis recovered judgment against him October 21, 1893, for $5,185.74. Those judgments remain

unpaid, except the sum of $2,863.66, which was realized by the Commercial Bank, October 30, 1893, from collaterals.

The Union Bank of Rochester recovered judgments against Thomas Bolton, September 21, 1893, for $2,033.61; same day for $3,033.71.

Frederick B. Hall recovered judgments against him November 1, 1893, for $1,025.48; same day for $4,048.64. These judgments were assigned by Hall to the Union Bank.

After executions against the property of Thomas Bolton issued upon all of these judgments were returned unsatisfied, these actions were brought to set aside a sale of property made by Thomas Bolton to the defendants Catherine Bolton and Frederick A. Sherwood on the alleged ground that it was made in fraud of the creditors of the vendor. And Hermann Behn, to whom defendant Sherwood sold his interest in the same property, was made a defendant in both actions, and in the complaints it was charged that he purchased with notice of the alleged fraud and that he was not a purchaser in good faith.

The complaints were dismissed as to Behn. As against the other defendants it was determined that the transfer of the property by Thomas Bolton to Catherine Bolton and Sherwood was in fraud of the creditors of the vendor and subject to the right of such creditors to have the property applied to the payment of their debts; that the Commercial Bank was entitled to recover against Catherine Bolton and Sherwood $7,283.45, the amount of its judgments; that the plaintiff Van Voorhis was entitled to recover against them $5,439.55, the amount of his judgments, and that the Union Bank of Rochester was entitled to recover against them $12,765.51, the amount of its judgments.

Judgments were perfected accordingly.

The property in question consisted of machinery, materials, stock, etc., in an establishment for the manufacture of shoes in the city of Rochester in which business the defendant Thomas Bolton had for several years been there engaged.

*William F. Cogswell,* for the appellants.

*Walter S. Hubbell* and *John Van Voorhis,* for the respondents.

BRADLEY, J.:

The alleged defense, and that which the defendants gave evidence tending to prove in answer to the charge of fraud, was that the sale

and purchase were made in good faith and for a consideration exist-
ing in the indebtedness of Thomas Bolton to the defendants Mrs.
Bolton and Sherwood respectively and in payment of such indebted-
ness to them.   It appears that Thomas Bolton commenced the busi-
ness in or about the year 1872 and continued until early in the year
1883, when by reason of a personal injury received by him he was
advised to discontinue his business for a time at least.   He then
sold out to Goodger and Naylor for the consideration of $33,000.
They paid him cash $14,000 and the residue by their notes on time.
This $14,000 he let his wife (the defendant Catherine Bolton) have,
and it was deposited in bank and in securities in her name, and by
them the fund however invested was then apparently treated as
belonging to her.   In the fall of 1883 he repurchased the business
and thereafter carried it on until the sale to the other defendants on
the 2d day of August, 1893.   This sale was evidenced by a written
bill of sale made by the seller, accompanied by an agreement in
writing of the parties to the sale stating, amongst other things, that
the consideration was an indebtedness to Sherwood of $11,744.56,
all represented by promissory notes except $1,492.42 in open
account, and indebtedness to Catherine Bolton of $8,200 in two
promissory notes and a further indebtedness to her in a large amount
for moneys loaned by her to him, and that he sold the property to
her and Sherwood and they purchased it in payment and satisfac-
faction of his indebtedness to them.   After Bolton repurchased the
property, and in 1884, the plaintiff Van Voorhis became his accom-
modation indorser and continued to indorse his paper up to near the
time of his sale in 1893, and the judgments recovered by the bank
plaintiffs were upon notes so indorsed by him.   And in the mean-
time Bolton obtained from his wife for use in his business her
moneys and securities in which investments had been made by her.
By written memorandum of date January 31, 1893, by them sub-
scribed, they made what purported to be a statement and settlement
of matters between them, the result of which, as there represented,
was an indebtedness of Bolton to his wife of $18,196.96, which they
adjusted at $18,000, and he agreed to and did convey to her some
property and transfer to her certain claims, amounting together to
$4,166.79, thus leaving a balance of $13,833.21 due her.   This con-

stituted the apparent consideration of the sale to her of the undivided half of the property in question.

A debtor has the lawful right to transfer property to any and less than all his creditors in payment of his debts owing to them, and they to accept it in payment to the exclusion of other of his creditors, provided it is done in good faith for such purpose and has a reasonably adequate consideration in the amount of the debts for the payment of which the transfer of the property is made. (*Wilder* v. *Winne*, 6 Cow. 284; *Auburn Ex. Bank* v. *Fitch*, 48 Barb. 344; *Loeschigk* v. *Hatfield*, 5 Robt. 26; 51 N. Y. 660; *Hale* v. *Stewart*, 7 Hun, 591; *Murphy* v. *Briggs*, 89 N. Y. 446.) The fact and the amount of the liability of Bolton to Sherwood are not seriously questioned.

The trial justice did not deem it necessary to find, and, therefore, did not consider the question whether or not the amount before mentioned as per their adjustment due from Bolton to his wife, was a subsisting indebtedness to her. He did find that the amount of the debts which Bolton owed to Mrs. Bolton and Sherwood was very much less than the value of the property transferred to them.

He also found that the transfer was made to hinder, delay and defraud the plaintiffs in the collection of their debts, and that Mrs. Bolton and Sherwood were aware of such fraudulent intent, participated in it and accepted the transfer to enable him to consummate such fraudulent purpose. If this conclusion was without reference to the question of the amount of the consideration, and had the support of evidence, the latter question was unimportant for the purposes of the relief sought by the action. (*Billings* v. *Russell*, 101 N. Y. 226; *Baldwin* v. *Short*, 125 id. 553.)

In 1883, when Bolton gave his wife the $14,000 and it was placed to her credit in the bank, he was solvent and at liberty to vest title in her to the fund. She evidently, in lending him her money and the securities in which some of it was invested, was governed by his desire in that respect; and it may, in view of his relation to her, be assumed that she acted on his advice in taking the transfer of the property. For some years prior to the time of his transfer in question of the property, Bolton's indebtedness from time to time increased, and was represented largely by his notes indorsed by Van Voorhis, to whom he transferred accounts of his customers as collat-

eral. The customers were not advised of the transfers of the accounts, and Bolton was permitted by Van Voorhis to collect them and make use of the proceeds in his business. At length, and shortly before August, 1893, Van Voorhis advised Bolton that he had concluded to have the accounts which were and should be taken as collateral, paid to him or to the banks where the notes were held. This, it seems, was deemed by Bolton embarrassing to him as he depended much upon collections for the payment of current expenses. The depression in trade for some time had been and was such that he deemed it necessary to have all the resources of his business to maintain it. He thereupon consulted the defendant Sherwood, who was also his creditor, and stated to him that unless Van Voorhis permitted him to collect the accounts as he had done he should sell out the property and business, and proposed to make the sale in that event to him and Mrs. Bolton. His consultations with Van Voorhis finally, as evidence tends to prove, resulted in the requirement of the latter that the accounts should be paid to him or into the banks and applied upon the notes indorsed by him. This precipitated the sale which was made August 2, 1893.

While Sherwood was not pressing Bolton he evidently had become somewhat anxious about his own matter, and his leading object in becoming the purchaser was to get payment of Bolton's liabilities to him. There was, however, a state of facts and circumstances disclosed by the evidence which permitted the inference that the sale to Mrs. Bolton and Sherwood was contemplated and made with a view to some ultimate benefit to the seller in relation to the plant and business, and that of such expectation on his part the purchasers were advised before and when the sale was made by him to them. Such relation of confidence with a view to some future advantage to Bolton, if such was contemplated, was prejudicial to the legal rights of the plaintiffs as his creditors, and as such fraudulent as against them, although the main purpose of the purchasers was to secure or obtain the payment of the debts due to them.

The view here taken is that, whether or not the sale was made with intent to defraud the other creditors, and whether the act of purchase was infected with a like imputation, were questions of fact, within the province of the trial justice to determine, and his conclusion in that respect was permitted and supported by the evidence

and the inferences legitimately derivable from it. This may have been founded somewhat upon the fact as found that the debts which Bolton owed the purchasers were much less in amount than the value of the property.

He had annually for some years furnished to Van Voorhis statements of his assets and liabilities. While the later ones had shown much less balances in his favor than the earlier ones, that of June, 1893, showed a balance of resources over liabilities of $25,550.46. There was some evidence on the part of the defendants tending to prove that such statement was incorrect, and that his resources were much less than his liabilities, and not equal in amount to the indebtedness before mentioned to Mrs. Bolton and Sherwood. The trial justice, however, found that the value of the property was $35,000. He also found that the consideration, which was $13,952.01, of the sale made by Sherwood to Behn on August 15, 1893, was not inadequate; that the sale was of all of Sherwood's interest in the property which had been transferred to him by Bolton, except certain accounts, which before then had been collected, and a considerable amount of the stock which had by Sherwood been made up and sold.

By reference to his opinion it seems that the trial justice, in the process by which he illustrated that the value of the property was considerably reduced when Sherwood sold to Behn, assumed that Sherwood had received payment for the $7,400 of manufactured goods he had shipped to customers before the sale to Behn, and which, less the expense to him incurred, amounted to $5,400, and that he also had the benefit of $4,000 of accounts transferred by Bolton, thus reducing the property $9,500 in value during the time intermediate the two sales, and giving adequacy to the consideration of the sale by Sherwood of his interest to Behn. The evidence does not seem to warrant the conclusion that the value of the property was in that manner to such extent reduced within that time. The evidence on the subject is to the effect that the bills for goods shipped during the time between the two sales and the accounts transferred by Bolton to his wife and Sherwood remained unpaid, less about $300, at the time of the sale to Behn; that Sherwood's interest in them, as in the other property, was transferred in that sale to him, and that during that time Sherwood paid out in and

about the business $2,698 and received $444.18, leaving a balance of $2,253.82 to his credit.    These facts are mainly represented by the evidence given by Sherwood, and are to some extent corroborated by the evidence of the bookkeeper.    While their relation to the action and to the business was such as to put their credibility in question, we find no evidence to the contrary in the record.    But error cannot properly be predicated upon incorrect statements in the opinion appearing to have been made in the process of deduction of facts.    Reference must be had to the facts as found in the decision, and if those which are material to the result have the support of evidence the conclusion may, in that respect, be sustained.

It is true that exception was taken to the finding on the subject of the receipts from goods shipped and from accounts transferred to Mrs. Bolton and Sherwood.    But that finding has no essential bearing upon the issues between the parties to this controversy. The misapprehended fact that the value of the property had been reduced by taking out of it $9,500 before the sale to Behn may have led to the conclusion that the consideration of the sale to him was not inadequate.    This was the only material or available bearing of that fact.    And it does not concern the remaining parties to the record.

The more serious question arises upon exceptions taken to the reception of evidence which may have led to the conclusion that the property transferred to Mrs. Bolton and Sherwood had the value of $35,000 and that the consideration of the sale was inadequate.

A witness on the part of the plaintiffs went to the factory in September or October, 1893, with a view of ascertaining the value of the property transferred by Bolton to the other defendants on August 2, 1893.    He there found the book containing the statement called inventory, made by Bolton or by his direction June 15, 1893, before mentioned.    The book was offered and received in evidence for the purpose of proving that the value of the merchandise as then represented was at that time $8,934.09.

The sales book, cash book and ledger of Bolton were also offered and received in evidence, and from those books the witness stated or read as it there appeared that after June 15, 1893, and prior to the second day of August following, the amount of merchandise purchased was $11,400, the amount of cash paid for labor $5,100,

and the amount of new accounts charged $8,500, making together $33,934.09, which, with the estimated value of the machinery, fixtures, furniture, lasts, dies and patterns, made $43,354.22, from which he deducted the amount of the accounts which had been transferred to Van Voorhis, $5,003.62, leaving a balance of $38,350.60 thus represented as the value of the property sold and transferred by Thomas Bolton to Mrs. Bolton and Sherwood. The fact so assumed, that the merchandise on hand June fifteenth may not have been reduced by the sales during that time, is not very apparent. That, however, is not important for the purposes of the question here presented.

When those books were severally offered in evidence objections were taken by the defendants Mrs. Bolton and Sherwood to the reception of them as evidence against them on the ground that the entries contained in the books were hearsay evidence and, as against them, incompetent. The objections were severally overruled, the books received in evidence and those two defendants excepted. Those entries in the books were in their nature the declarations of Thomas Bolton made or by him caused to be made before (so far as appears) any sale to the other defendants was contemplated. They were admissible against him as bearing upon the question of his intent to defraud his creditors other than those to whom he made the sale. Fraudulent intent on the part of a vendor is sufficient to render the sale ineffectual as against his creditors unless the vendee is a purchaser for value, and when the fraudulent intent of the vendor is shown the burden is cast upon his vendee to prove that he is a purchaser for a valuable consideration. (2 R. S. 137, §§ 1, 5; *Starin* v. *Kelly*, 88 N. Y. 418.) But the declarations of the vendor, which may merely tend to impute such intent to him, are not admissible as against his vendee. The intent alone of the former in fraud of his creditors is effectual to invalidate his sale as against them when it does not appear that the sale was for a valuable consideration. The entries in question, as they appeared in Bolton's books, were his *ex parte* declarations and were in no sense competent as evidence against the other defendants, and their exceptions to the reception of the entries as evidence against them were well taken. (*Truax* v. *Slater*, 86 N. Y. 630; *Bush* v. *Roberts*, 111 id. 278; *Baldwin* v. *Short*, 125 id. 553; *Flannery* v. *Van Tassel*, 127

id. 631; 37 N. Y. St. Repr. 228; *Flagler* v. *Wheeler*, 40 Hun, 125; *Flagler* v. *Schoeffel*, Id. 178.)

The rule which gives admissibility to the declarations of one of several persons as evidence against all of them is applicable when they are united in a conspiracy and the declarations are made in aid of the common purpose. (*Apthorp* v. *Comstock*, 2 Paige, 482; *Dewey* v. *Moyer*, 72 N. Y. 70.) Such was the case of *Loos* v. *Wilkinson* (110 N. Y. 195), where it was held that the declarations of one of the defendants were admissible against all of them because they were in part the means used to accomplish the fraudulent scheme then in progress and in which all of the defendants were united. The reason of that rule has no application to the question in the present cases in relation to the declarations of Bolton as represented by the entries made in his books when they appear to have been made. In *Brisbane* v. *Pratt* (4 Den. 63) the declarations of the former holder of a promissory note were treated as admissible against the plaintiff because it was held that the latter, as such party, represented the interest of the person whose declarations were in question, and, therefore, it was against the party in interest that the evidence was offered. That case in some of its features was questioned and practically overruled in *James* v. *Chalmers* (6 N. Y. 209).

In *Von Sachs* v. *Kretz* (72 N. Y. 548) it was held that the declaration of a bankrupt made before his bankruptcy were admissible in support of a claim against his estate for the reason that the relation of the assignee in bankruptcy was that of representative of the bankrupt.

And in *Kennedy* v. *Wood* (52 Hun, 46) that doctrine was applied to an assignee of a voluntary assignment for the benefit of creditors of the assignor. It is unnecessary for the purposes of the present case to inquire whether or not the rule in such cases should be analogous. (*Vidvard* v. *Powers*, 34 Hun, 221; *Bullis* v. *Montgomery*, 50 N. Y. 352.)

There is no opportunity upon the evidence to bring those entries in the book within any purpose common to the defendants or to apply to them the rule of *res gestæ*. They were made before the sale and purchase appear to have been had in view by the parties. The question, therefore, is whether it is reasonable to assume that

the purchasers may have been prejudiced by the introduction of such evidence against them.

As has already been observed there was evidence tending to prove that the sale was made and taken in payment of debts owing by the vendor to the purchasers. That being so the purchase was for a valuable consideration within the meaning of the statute. (*Murphy* v. *Briggs*, 89 N. Y. 446.)

The value of the property was a legitimate fact bearing upon the main issue. And those entries in the books apparently constituted the evidence upon which it was found by the court as against the purchasers that the consideration was inadequate. It is true that in respect to the items of amount of cash paid for labor and salaries ($5,100), and of new accounts charged ($8,500), there was some other evidence to the same effect. But no other evidence in the record tends to prove anything like the amount of merchandise on hand between June 15 and August 2, 1893, as that indicated by the entries in the books. And in view of the fact which that evidence tended to prove it cannot be seen that the result reached by the trial court as against Mrs. Bolton and Sherwood may not have been, and was not, in some sense attributable to it, although it possibly may have been controlled wholly by other considerations.

The exceptions to reception of such evidence against those two defendants were well taken, and the error was such as to require the direction of a new trial as to them.

The further question relating to the nature and form of the judgments directed against those defendants is not considered on this review. If that question had been reached, and any correction found to be necessary, it could have been accomplished by modification.

There was no error as against the defendant Thomas Bolton. The judgments against the defendant Thomas Bolton should be affirmed, and as to the other defendants reversed and new trials granted, costs to abide the final award of costs.

DWIGHT, P. J., LEWIS and WARD, JJ., concurred.

Judgment as against the defendant Thomas Bolton affirmed, with costs; as to the defendants Catherine Bolton and Frederick A. Sherwood judgment reversed and a new trial granted, costs of this appeal to abide the final award of costs.